# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X  Docket#
UNITED STATES OF AMERICA,       :  17-cr-00281-BMC-1
                                :
    - versus -                  :  U.S. Courthouse
                                :  Brooklyn, New York
CARLOS RICHARD MARTINEZ,        :
            Defendant           :  May 25, 2017
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
BEFORE THE HONORABLE MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government**:          **Bridget M. Rohde, Esq.**
                                 Acting U.S. Attorney

                          BY:    **Nadia Shihata, Esq.**
                                 **Marisa Seifen, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, New York   11201


**For the Defendant**:           **Zoe J. Dolan, Esq.**
                                 154 Grand Street
                                 New York, NY 10013




**Transcription Service**:       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Avenue
                                 West Islip, New York 11795
                                 laferrara44@gmail.com




Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Criminal Cause for Arraignment,

2   case number 17-cr-281, United States v. Carlos Martinez.

3          Counsel, your name for the record.

4          MS. SHIHATA:  Good afternoon, your Honor.

5          Nadia Shihata and Marisa Seifen for the United

6   States.

7          MS. DOLAN:  Zoe Dolan for Mr. Martinez, who is

8   present in custody.

9          Good afternoon once again, your Honor.

10          THE COURT:  Good afternoon, counselors.  Good

11   afternoon, Mr. Martinez.

12          Ms. Dolan, have you received a copy of the

13   indictment and discussed with Mr. Martinez the charges

14   set forth therein.  There are 19 counts, all relating to

15   sexual misconduct with federal prisoners.

16          MS. DOLAN:  Yes, I believe there are 20.

17          THE COURT:  20.

18          MS. SHIHATA:  Yes, your Honor.

19          THE COURT:  Oh, you're right.

20          MS. SHIHATA:  20 counts.

21          THE COURT:  20 sexual abuse --

22          MS. DOLAN:  Yes.  Yes, I have, your Honor.

23          THE COURT:  Do you understand the nature of the

24   charges against you, Mr. Martinez?

25          THE DEFENDANT:  Yes, your Honor.

Transcriptions Plus II, Inc.

3

Proceedings

1              THE COURT:  Okay.  Is your client prepared to

2  -- does your client waive public reading of the charges?

3              MS. DOLAN:  Yes, your Honor.

4              THE COURT:  And is he prepared to enter a plea?

5              MS. DOLAN:  Yes, your Honor.  He has authorized

6  me to enter a plea of not guilty at this time.

7              THE COURT:  This is the defendant's first

8  appearance and I assume you've had an opportunity to read

9  the government's letter seeking detention?

10             MS. DOLAN:  Yes, I have had an opportunity to

11  review that memo.

12             THE COURT:  Okay.  Are you seeking to have the

13  defendant released?

14             MS. DOLAN:  Yes.

15             THE COURT:  Okay.

16             MS. DOLAN:  We're prepared to present a bail

17  package this afternoon for your Honor's consideration.

18             THE COURT:  Okay.  Maybe before we do that, why

19  don't we deal with the exclusion of time.

20             MS. SHIHATA:  Yes, your Honor.  The district

21  court has set a status conference date of June 12th at

22  9:45 a.m. and we're seeking an order of excludable delay

23  to begin producing discovery to the defendant and

24  potentially -- excuse me -- potentially engage in plea

25  negotiations.

4

Proceedings

1      MS. DOLAN:  I've discussed that with Mr.
2  Martinez and we've both signed the application.
3      THE COURT:  Okay.  The grounds for an exclusion
4  is that you're engaged in -- that there's a potential for
5  plea negotiations or that there's substantial discovery
6  or -- I just --
7      MS. SHIHATA:  Well, we haven't --
8      THE COURT:  There has to be some basis for --
9      MS. SHIHATA:  Given that he was arrested
10  earlier today, we have not yet produced discovery.  We
11  intend to produce it in the coming days and as is our
12  standard practice, we generally present proposed plea
13  agreements to defendants and at that point, imagine
14  there's a potential for discussion about that.
15      MS. DOLAN:  Yes, your Honor.  It's my
16  understanding this case has been under investigation for
17  some time, so I anticipate that the government will be
18  forthcoming with their position with respect to a
19  potential plea and disposition short of trial.
20      THE COURT:  And do you think there is a
21  reasonable likelihood of a disposition?
22      MS. DOLAN:  I certainly hope so, given the
23  potential guidelines exposure.  Yes, your Honor.
24      THE COURT:  And are you of the view that you
25  need an exclusion of time in order to engage in plea

Transcriptions Plus II, Inc.

5

Proceedings

1  negotiations without compromising your ability to prepare

2  for trial?

3          MS. DOLAN:  Yes, your Honor.

4          THE COURT:  Okay.  Then I find that it would be

5  in the interest of justice to exclude the time period

6  from today until June 12th within which trial must

7  commence.

8          Now let me hear you on the bail package.  Is

9  there anything else you want to add in addition to the

10  detention letter that you filed, Ms. Shihata?

11          MS. SHIHATA:  Well, just, we would like to

12  reiterate that this defendant is charged with extremely

13  serious offenses and based on the proffer in the

14  detention memo, it is clear that he violated this

15  victim's civil rights by committing aggravated sexual

16  abuse, not once, not twice, not three times but over and

17  over and over again.  And he used physical force to do

18  so, shoving his penis into her mouth, pinning her down on

19  a desk and penetrating her and he did this as a

20  lieutenant at the MDC, who had responsibilities that

21  included training other staff on the protocols for

22  preventing such abuse.

23          This was a victim under his care who was 20

24  years his junior, who spoke minimal English and these

25  events occurred in an isolated area on weekends, when he

Transcriptions Plus II, Inc.

6

Proceedings

1   knew based on his many years at the MDC, that his actions

2   would be difficult to detect, deter and prosecute.

3           And in our view, the very nature and

4   circumstances of these offenses is sufficient by itself

5   to show that by clear and convincing evidence that he is

6   a danger to the community and given that the significant

7   sentence he faces, up to life imprisonment on some of

8   these charges and as defense counsel just alluded to, a

9   high guidelines range as we've outlined in the memo, and

10   the fact -- the facts underlying this prior arrest he

11   had, this road rage incident, where he cut off a complete

12   stranger, got out of his car, banged on her vehicle --

13           THE COURT:  I read your memo.  That's very

14   troubling, I agree.

15           MS. DOLAN:  Your Honor, we agree with

16   pretrial's recommendation and are prepared to present a

17   bail package in accordance with that recommendation.  I

18   don't believe that flight risk is a consideration here.

19   Mr. Martinez has been a lifetime resident of New York

20   City and I don't think there's any indication that he

21   would go anywhere else.  His entire life and his wife are

22   here.

23           We have two suretors for the Court's

24   consideration.  The first is Mr. Martinez's wife, Ira

25   Soto Martinez (ph.), she's employed.  She makes $40,000 a

7

Proceedings

1  year. We also have a fellow employee at the Bureau of

2  Prisons, at MDC-Brooklyn, Anthony Castellanos (ph.), whom

3  Mr. Martinez has known for 13 years.  Mr. Castellanos, I

4  would note, is not involved in the program that is at

5  issue in this case at the Bureau of Prisons, so that's

6  separate and apart from what we're dealing with here.

7              Mr. Martinez is Mr. Castellanos' supervisor.

8  Mr. Castellanos is prepared to post two properties, one

9  in Jacksonville, Florida, one in the Bronx.  The property

10 in Jacksonville -- oh, and he makes $84,000 a year.  The

11 property in Jacksonville is market value of around

12 $210,000 with $80,000 in equity.  The property in the

13 Bronx is around $425,000 with approximately $200,000 in

14 equity.  So there's potentially $80,000 -- $280,000 in

15 equity to work with although I don't really think a bond

16 beyond $100- or $150,000 that could be partially

17 supported by either one of those properties, I don't

18 think it's necessary to go beyond that in this particular

19 case, given the close proximity and the relationships of

20 the sureties to Mr. Martinez.

21              I don't think that the government Hurricane

22 Sandy established clear and convincing evidence that Mr.

23 Martinez, given the property conditions of release, and

24 your Honor's well aware of the impositions that can be

25 added to ensure compliance, I don't think that that

8

Proceedings

1  establishes that Mr. Martinez is likely to be a danger to

2  the community under the circumstances.

3          I note that with respect to the other cases,

4  including one before your Honor, that the government

5  cited in its brief, you know, robbery and firearm

6  offenses, I think that once Mr. Martinez is effectively

7  removed from the environment in which as the government

8  alleges, the activity could not -- occurs undetected.  I

9  think once he's outside of that environment, those

10  considerations begin to change significantly.

11          I think another factor is the media attention

12  that has already hit the Internet.  So Mr. Martinez will

13  not be in the same type of situation that he was and will

14  not have a light shined on him.  So I don't think that

15  considerations that the government raises rise to the

16  level of clear and convincing evidence why this case

17  should not be bailable.

18          So for all of those reasons -- Mr. Martinez --

19  I understand that the most recent event last year is

20  troubling.  Mr. Martinez, however, is 47-years-old and I

21  think if we were looking at a lifetime criminal history,

22  that I would have a much more difficult time arguing what

23  I am arguing today but to the extent that his temper got

24  the better of him in that incident, I don't think there's

25  any reason to believe that an otherwise law-abiding life

9

Proceedings

1  and service to his country does not indicate that Mr.

2  Martinez is not prepared to get in line, stay on the

3  rails, and deal with this case responsibly and handle

4  these charges as they move forward.

5          THE COURT:  Well, the state charges to which he

6  pled guilty occurred in April of 2016, close to the end

7  of the period in which he's alleged to have committed

8  sexual assault of the female prisoner.  And as Ms.

9  Shihata mentioned, he committed the acts over an extended

10 period of time.

11         I agree perhaps without this state charge, it

12 is certainly possible to find that the defendant would

13 not be in a position to pose a danger to other inmates

14 but the violence that was alleged to have been afflicted

15 on the female victim in that road rage context is

16 certainly, as I said, troubling, and it may reflect a

17 disregard for the physical well-being of others and in

18 particular, probably women.  There's just no explanation

19 for that kind of conduct and his abuse of the trust given

20 to him is a cause of concern.

21         I don't understand how the fact that now he is

22 the subject of media -- extensive media disclosures will

23 necessarily change the underlying propensities that he's

24 demonstrated, both in the indictment and in the

25 defendant's -- in the government's detention letter?

Transcriptions Plus II, Inc.

10

Proceedings

1           MS. DOLAN:  I certainly think anger management

2  classes and perhaps even a mental health component would

3  be an appropriate way to proceed under the circumstances

4  given those very real concerns that I completely

5  understand.  Ms. Martinez's wife, however, is here today

6  and certainly no one forced her to act as a suretor on

7  this bond.

8           But I do believe that those conditions may not

9  even be appropriate but may help the situation and may be

10  called for.

11           THE COURT:  Well --

12           MS. SHIHATA:  Your Honor --

13           THE COURT:  Go ahead.  Go ahead.

14           MS. SHIHATA:  I think we're beyond anger

15  management with this -- the allegations in this

16  indictment.  This, as your Honor noted, was a sustained

17  course of conduct over a period of months, targeting the

18  same victim over and over again.

19           And I also think that the state charge -- the

20  state arrest regarding the incident on the FDR Drive, not

21  only goes to dangerousness but also goes to risk of

22  flight.  He fled the scene there.  He didn't wait for

23  cops to show up.  He got out of there and didn't report

24  it himself at any point until, you know, he got arrested

25  and -- a couple of months later.

Transcriptions Plus II, Inc.

11

Proceedings

1          It's all very troubling and this is all -- and

2   I think it's also troubling that this is a defendant

3   based on the charges in the indictment that the Court

4   should not have confidence in him upholding promises or

5   oaths he takes based on the conduct in the indictment.

6          MS. DOLAN:  The only response I would have to

7   say to that is that Congress specifically excluded this

8   provision of the United States Code from the presumption

9   that's often afforded to the government unless it's a

10  minor.  And so I take all of those considerations to

11  heart and certainly I am not claiming that anger

12  management is an appropriate to deal with the charges.

13  That's obviously a completely separate matter.

14          All I was saying is that incorporating anger

15  management and mental health treatment into conditions of

16  release would be an appropriate way to deal with the

17  types of concerns that your Honor was -- I understood

18  your Honor to be raising with respect to that particular

19  offense.

20          But even putting all of that aside, I do think

21  this is a very substantial bail package, secured by two

22  pieces of property and individuals who are both

23  financially responsible and who Mr. Martinez will owe

24  that duty to in order to comply with what Congress has

25  determined is a defense presumption case.  So for those

12

Proceedings

1  reasons, I do think bail can be achieved.

2           THE COURT:  Well, the Bail Reform Act provides

3  that detention is warranted if there's a risk of flight

4  and the Court so finds by a preponderance of the evidence

5  or by clear and convincing evidence of dangerousness and

6  sometimes the government's case is assisted due to

7  congressional concern about certain types of crimes but

8  there are many crimes that are committed that are not

9  presumption covered by any applicable presumption for

10 which the Court may find that detention is warranted.  So

11 that's neither here nor there.

12          I do think though it's the fact that Congress

13 has chosen to protect, give added protection to minors,

14 highlights the significance of his conduct here where

15 particularly given the nature of the statutes, with which

16 he's charged, he's charged with having engaged in conduct

17 of, you know, abuse of people -- of a woman who was

18 entrusted to him and anyway, but that doesn't trigger the

19 presumption.

20          Ultimately, the question is whether or not a

21 bail package could be sufficient to deal with the issue,

22 risk of flight or dangerousness.  I think it's not quite

23 so clear cut in a case where you're dealing with such a

24 substantial sentence, potential sentence, that a person

25 who was born and grew up in this district is not a risk

13
Proceedings

1  of flight but I am -- unlike the typical case where we

2  skip the arguments on dangerousness and focus on risk of

3  flight, I am just going to the dangerousness because I

4  find it very troubling, the fact that the sort of offense

5  he was -- that he's committed that led to his arrest and

6  his prior state court offense and I don't think any sort

7  of bail package based on the wish that anger management

8  therapy might assist in controlling his behavior would be

9  sufficient to protect the community.  So I am going to

10 enter a permanent order of detention.

11            THE CLERK:  Is there anything else?

12            MS. SHIHATA:  Not from the government, your

13 Honor.

14            MS. DOLAN:  Just from the perspective of the

15 defense, I think there is the question of whether Mr.

16 Martinez qualifies for full-fledged CJA representation,

17 whether he --

18            THE COURT:  Yes, I was going to raise that.

19 It's --

20            MS. DOLAN:  Or whether he was just going to

21 retain alternative counsel.  I don't believe that's been

22 determined.

23            THE COURT:  I would have to confer with the CJA

24 committee.  I mean it's -- certainly if we don't consider

25 -- with his wife's income, which I am not sure is

Transcriptions Plus II, Inc.

14

Proceedings

1  appropriate to do here, he's right really on the

2  borderline of qualification but this may be the sort of

3  case if he wishes to continue with court-appointed

4  counsel that we could engage in requiring a partial

5  contribution towards the attorney's fees that are

6  incurred through the Criminal Justice Act appointment.

7          MS. DOLAN:  I believe Mr. Martinez will be

8  retaining counsel --

9          THE COURT:  Okay.

10         MS. DOLAN:  -- but in any event, it might

11 behoove the record to have that determination, whatever

12 and whenever it occurs.

13         THE COURT:  I'll confer with the CJA Committee

14 but if Mr. Martinez gets new counsel before your next

15 conference on June 12th, then I will be sure then that

16 won't be an issue.  I think if you do obtain new counsel,

17 it would make sense for you to get new counsel before

18 June 12th.  Mr. Martinez and -- but in any event, I will

19 have this issue resolved before then.

20         MS. DOLAN:  Thank you very much.

21         THE CLERK:  Thank you.

22              (Matter concluded)

23                  -o0o-

24

25

Transcriptions Plus II, Inc.

15

**C  E  R  T  I  F  I  C  A  T  E**


         I, LINDA FERRARA, hereby certify that the

foregoing transcript of the said proceedings is a true

and accurate transcript from the electronic sound-

recording of the proceedings reduced to typewriting in

the above-entitled matter.


         I FURTHER CERTIFY that I am not a relative or

employee or attorney or counsel of any of the parties,

nor a relative or employee of such attorney or counsel,

or financially interested directly or indirectly in this

action.


         IN WITNESS WHEREOF, I hereunto set my hand this

**6th** day of **May**, 2017.


Linda Ferrara

                        AAERT CET**D 656
                        Transcriptions Plus II, Inc.

Transcriptions Plus II, Inc.