NMA:NS
F. #2016R01322

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -                                         Docket No. 17–CR 281 (BMC)

CARLOS RICHARD MARTINEZ,

             Defendant.

- - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW IN SUPPORT OF PRETRIAL DETENTION

                                                                                  BRIDGET M. ROHDE
                                                                                   ACTING UNITED STATES ATTORNEY
                                                                                   Eastern District of New York
                                                                                   271 Cadman Plaza East
                                                                                  Brooklyn, New York 11201

Nicole M. Argentieri
Marisa M. Seifan
Nadia I. Shihata
Assistant U.S. Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of pretrial detention of the defendant CARLOS RICHARD MARTINEZ. On May 24, 2017, a grand jury in the Eastern District of New York returned a 20-count sealed indictment charging the defendant with (1) five counts of deprivation of civil rights under color of law, in violation of 18 U.S.C. § 242; (2) five counts of aggravated sexual abuse, in violation of 18 U.S.C. § 2241(a)(1); (3) five counts of sexual abuse, in violation of 18 U.S.C. § 2242(1); and (4) five counts of sexual abuse of a ward, in violation of 18 U.S.C. § 2243(b). The aggravated sexual abuse and related civil rights charges constitute crimes of violence for which the defendant faces up to life imprisonment. The defendant also faces a maximum sentence of life imprisonment on the sexual abuse charges and a maximum sentence of 15 years' imprisonment on each of the sexual abuse of a ward charges. In light of, inter alia, the nature and seriousness of the charges, the defendant's dangerousness and recent past criminal conduct, and the length of the sentence the defendant faces, the defendant poses a danger to the community and a risk of flight and should be detained pending trial.

LEGAL STANDARD

I.  Bail Reform Act

Under the Bail Reform Act, 18 U.S.C. § 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight must be supported by a preponderance of

the evidence.  See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

The Bail Reform Act lists four factors a court should consider in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release and (4) the evidence of the defendant's guilt.  See 18 U.S.C. § 3142(g).  Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means.  See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings); Ferranti, 66 F.3d at 542 (same); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986) (same).  As the Second Circuit has explained:

> [I]n the pre-trial context, few detention hearings involve live testimony or cross examination.  Most proceed on proffers.  See United States v. LaFontaine, 210 F.3d 125, 131 (2d Cir. 2000).  This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery."  United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.) (quoted approvingly in LaFontaine, 210 F.3d at 131).  Indeed, § 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence.  Id.

United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir.  2004).

II.     Elaborate Bail Packages Are Insufficient to Protect the Community Against Violent Defendants

The Second Circuit repeatedly has rejected "elaborate" bail packages for dangerous defendants.  See Ferranti, 66 F.3d at 543-44 (rejecting $1 million bail package secured by real property); United States v. Orena, 986 F.2d 628, 630-33 (2d Cir. 1993) (rejecting $3 million bail package secured with real property, home detention, restricted

visitation and telephone calls, and electronic monitoring); United States v. Colombo, 777 F.2d 96, 97, 100 (2d Cir. 1985) (rejecting $500,000 bail package secured by real property). The Second Circuit has viewed home detention and electronic monitoring as insufficient to protect the community against dangerous individuals. In United States v. Millan, the Second Circuit held that:

> Home detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills. If the government does not provide staff to monitor compliance extensively, protection of the community would be left largely to the word of [the defendants] that [they] will obey the conditions.

4 F.3d 1039, 1048-49 (2d Cir. 1993) (citations and internal quotations omitted). See also Orena, 986 F.2d at 632 ("electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (internal quotation marks and citations omitted).

Similarly, courts in this district have denied dangerous defendants bail in recognition of the Second Circuit's dim view of the effectiveness of home detention and electronic monitoring. See, e.g., United States v. Cantarella, 2002 WL 31946862, at *3-4 (E.D.N.Y. 2002) (Garaufis, J.) (adopting "principle" of "den[ying] bail to 'dangerous' defendants despite the availability of home detention and electronic surveillance and notwithstanding the value of a defendant's proposed bail package"); United States v. Agnello, 101 F. Supp. 2d 108, 116 (E.D.N.Y. 2000) (Gershon, J.) ("[T]he protection of the community provided by the proposed home detention remains inferior to that provided by confinement in a detention facility[.]"); United States v. Masotto, 811 F. Supp. 878, 884 (E.D.N.Y. 1993) (rejecting bail because "the Second Circuit appears to be saying to us that in

3

the case of 'dangerous defendants' the Bail Reform Act does not contemplate the type of conditions suggested by this Court [including home confinement and electronic monitoring] and that, even if it did, the conditions would not protect the public or the community, given the ease with which many of them may be circumvented").

Finally, courts in this district have remanded law enforcement defendants on dangerousness grounds in cases where they used their positions to commit violent crimes, finding the nature of the charges themselves were a sufficient basis for detention. See United States v. Besnik Llakatura, Criminal Docket No. 13-668 (ENV), ECF Docket No. 30 (Transcript of December 6, 2013 Bail Hearing before the Honorable Cheryl Pollak) at 16 (finding that NYPD officer defendant was a danger to the community "based on the nature of the charges," which were "serious extortion charges involving very serious threats of violence, coupled with the use of a firearm [by a codefendant], regardless of who carried it" and noting that the defendant was "not just your average defendant," but rather "a police officer who has a position of trust in the community"); United States v. Jose Tejada, Criminal Docket No. 08-242 (SLT), ECF Docket No. 724 (Transcript of April 4, 2013 Detention Hearing before the Honorable Marilyn Go) at 22 (entering permanent order of detention against NYPD officer defendant charged with Hobbs Act robberies committed years earlier finding that the charges in the indictment were "very disturbing" and noting that the defendant engaged in them while "in the uniform of a police officer").

## ARGUMENT

Detailed below is a proffer of the relevant facts in support of the government's position with respect to the pretrial detention of the defendant. LaFontaine, 210 F.3d at 130-31 (government entitled to proceed by proffer in detention hearings).

4

I.       Proffered Facts Regarding the Defendant's Crimes

The charges in the indictment stem from the defendant's conduct over a period of five months from December 2015 to April 2016, using physical force and fear to repeatedly rape a sentenced female prisoner at the Metropolitan Detention Center in Brooklyn, New York ("MDC"), who is identified in the indictment as "Jane Doe."  At the time of the defendant's crimes, he was an active-duty United States Bureau of Prisons Lieutenant at the MDC, with supervisory authority over other correctional officers and supervisory and disciplinary authority over inmates.   More specifically, as a Lieutenant, the defendant had responsibility for (1) operational aspects of the Correctional Department and supervision of correctional officers assigned to given areas of the MDC; (2) providing day-to-day counseling of subordinates and resolving work-related problems; (3) evaluating the performance of subordinates; (4) maintaining order between both officers and inmates; and (5) handling disciplinary matters.  As a Lieutenant, the defendant was also responsible for conducting rounds at the MDC to identify and deter staff sexual abuse and sexual harassment. According to his performance reviews, the defendant was also involved in educating MDC staff regarding the Prison Rape Elimination Act ("PREA") protocols and incidents.  Notwithstanding these responsibilities, on or about November 22, 2015, the defendant posted a photograph on his Facebook page of two male individuals, who appear to be MDC staff members, hugging each other at a bar with the caption "It's only PREA when you don't like it."

While serving as a Lieutenant at the MDC, the defendant regularly directed Jane Doe and other female inmates to clean areas on the second floor of the MDC's East Building, including the Lieutenants' Office and surrounding areas.  The defendant's

5

inappropriate behavior commenced when he began making sexually explicit comments to Jane Doe, including suggesting that she masturbate while thinking of him in the shower. At the time, Jane Doe was an inmate in her late 20s, who spoke minimal English. The defendant, a former marine, was in his late 40s and communicated with Jane Doe in Spanish, his second language.

In early December 2015, the defendant's behavior escalated to serious, violent criminal conduct. Specifically, while Jane Doe prepared to clean the Lieutenants' Office area on a weekend,[1] the defendant exposed his erect penis through the zipper of his pants and then forcibly grabbed the back of Jane Doe's head with his hands and pulled her head towards his penis to insert his penis into Jane Doe's mouth. Jane Doe attempted to push herself away. Ultimately, the defendant was able to insert his penis into her mouth. Thereafter, the defendant forcefully lifted Jane Doe up, pinned the top portion of her body against the top of a desk, pulled Jane Doe's pants and underwear down and penetrated Jane Doe's vagina with his penis from behind, roughly thrusting his penis inside Jane Doe multiple times. The defendant then pulled Jane Doe off the desk and continued to penetrate her, ejaculating inside of her and leaving Jane Doe bleeding from her vagina.

Put simply, the defendant used his superior position, authority, and strength, to overpower and rape Jane Doe, a petite female prisoner under his control and care. The defendant did not use a condom when he raped Jane Doe, leaving her terrified that, among other things, she would get pregnant. The defendant assured Jane Doe that she would not get pregnant because he had undergone a vasectomy, rendering him incapable of impregnating

---

[1] Witnesses have advised that on Friday afternoons and weekends, the second floor of the MDC's East Building is generally empty.

6

others. Medical records obtained during the course of the government's investigation confirm that the defendant underwent a vasectomy in 2013. Before allowing Jane Doe to return to the unit where she was housed, the defendant warned Jane Doe not to tell anyone what had happened, telling her that she could receive additional time in prison if anyone found out.

Following this initial rape, the defendant continued to rape Jane Doe repeatedly in the Lieutenants' Office in the months that followed. Jane Doe does not recall the exact number of times this occurred, but estimates that the defendant had sex with her at least 10 times. Throughout this period, the defendant also made clear to Jane Doe that he knew details about her familial circumstances and the fact that she rarely, if ever, received visitors at the MDC. In or about February 2016, the defendant learned that Jane Doe made a phone call to a friend in which she, inter alia, mentioned the defendant's name in a context that could bring scrutiny to the inappropriate nature of his contact with Jane Doe. The defendant then angrily confronted Jane Doe about the phone call and, among other things, (1) warned Jane Doe that an investigation could follow, which would result in her receiving an additional, significant prison sentence, and (2) admonished Jane Doe to lie to investigators if they spoke to her. Thereafter, the defendant ceased calling on Jane Doe to clean the second floor for him and ceased raping Jane Doe, until in or about April 2016.

In or about April 2016, shortly before Jane Doe was scheduled to be released from the custody of the Bureau of Prisons to the custody of Immigration and Customs Enforcement ("ICE"), the defendant again sought Jane Doe's assistance in cleaning the Lieutenants' Office area and used that opportunity to forcibly penetrate Jane Doe's vagina with his penis one last time before she left the MDC. On this final occasion, the defendant

7

ejaculated on Jane Doe's lower back, stating, in substance and in part, that he did so in case "immigration" were to "check" her medically.

II.     The Defendant Constitutes A Danger to the Community and Should Be Detained

As set forth below, each of the § 3142(g) factors demonstrates by clear and convincing evidence that the defendant is a danger to the community and should be detained.

A.     The Nature and Circumstances of the Crimes Charged

As set forth above, the defendant is charged with crimes of violence punishable by a term of imprisonment of up to life in prison. See 18 U.S.C. §§ 3142(g)(1) and 3156(a)(4)(A) (defining a "crime of violence" as an offense that has as one of its elements the "attempted use, or threatened use of physical force against the person or property of another"). The nature and circumstances of the charged crimes are particularly egregious. Here, the defendant – who, as a Lieutenant, held a supervisory position at the MDC – brazenly abused his position and authority to repeatedly rape a female prisoner under his care, custody, and control over a period of months. The defendant chose as his victim a sentenced prisoner who spoke minimal English, who he knew had virtually no visitors, and would be sent to ICE custody following her release from BOP custody. In an effort to further conceal his criminal conduct, the defendant essentially threatened Jane Doe with the prospect of additional prison time if anyone were to find out what had transpired. In grossly abusing his position of trust and authority in this manner, the defendant's conduct reveals a complete lack of respect for the rule of law or the oath he took as a federal law enforcement officer. Rather than support and defend the Constitution, as his oath as a BOP Lieutenant

8

required,[2] the defendant violated Jane Doe's civil rights by repeatedly raping her. The nature and circumstances of the charged crimes, which were committed with impunity over a sustained period of time by a defendant whose official responsibilities included protecting Jane Doe and other inmates from harm, are egregious and on their face demonstrate by clear and convincing evidence that the defendant is a danger to the community and should be detained.

> B. The History and Characteristics of the Defendant and Seriousness of the Danger Posed by the Defendant's Release

As described above, the underlying criminal conduct charged in the indictment was not an isolated incident, but rather a sustained and repeated course of conduct over a period of months. The defendant's repeated willingness to not only ignore his sworn duty as a federal correctional officer to uphold the law and protect the prisoners under his authority and control, but also to flagrantly obstruct justice by using fear to prevent a crime victim from coming forward, is strong evidence that the defendant is likely to attempt witness tampering or other obstructive conduct if released, a factor relevant to the assessment of the seriousness of the danger posed by the defendant's release.

In addition, the defendant's August 9, 2016 arrest by the New York City Police Department ("NYPD") for assault in the third degree with intent to cause physical injury, in violation of New York Penal Law ("NYPL") § 120.00(1) and criminal mischief

---

[2] See 5 U.S.C. § 3331 (setting forth oath for individuals "appointed to an office of honor or profit in the civil service or uniformed services," which includes an oath to "support and defend the Constitution of the United States" and to "faithfully discharge the duties" of the individual's office); 28 C.F.R. § 0.151 (authorizing, inter alia, the Director of the Bureau of Prisons to designate "officers or employees to administer the oath of office required by section 3331 of title 5").

9

with intent to damage property, in violation of NYPL § 145.00(1), further demonstrates his dangerousness by clear and convincing evidence. The NYPD complaint report associated with the defendant's 2016 arrest indicates that the underlying conduct took place on the morning of April 7, 2016 at the northeast corner of FDR Drive and East 42nd Street in Manhattan. According to the complaint made by a 33-year-old female victim, the defendant cut her off while she was driving northbound on the FDR Drive. The defendant then proceeded to follow the victim's vehicle. When the victim's vehicle stopped due to traffic near the East 42nd Street exit, the defendant got out of his vehicle and started banging on the victim's vehicle, damaging the windshield and driver's side mirror, and yelling "get out of the car." When the victim exited her vehicle, the defendant punched her twice in the face, causing swelling to her right cheek. The defendant then fled the scene in his vehicle. The complaint report indicates that the defendant was a stranger to the victim. On February 27, 2017, the defendant ultimately pleaded guilty to Disorderly Conduct, in violation of NYPL 240.20, and received a conditional discharge sentence.

        The circumstances underlying the defendant's August 2016 arrest – which involved punching a female stranger twice in the face and using physical force to damage her vehicle before fleeing the scene to avoid apprehension – further demonstrate the defendant's volatility, violence and dangerousness.[3] The defendant's history and characteristics thus weigh heavily in favor of detention.

---

        [3] In addition, the defendant has access to and knowledge of firearms. The defendant is assigned as a firearms instructor at the BOP and, as a federal law enforcement officer, the defendant is permitted to carry a concealed weapon throughout the United States while off-duty. The defendant's Facebook page includes numerous photographs of guns, including photographs of the defendant with guns.

10

C. The Evidence of the Defendant's Guilt

The government's evidence of the defendant's guilt as to the charged crimes, which are charged by indictment, is strong. The government will prove the charged crimes at trial through, among other evidence, victim testimony, the testimony of multiple other witnesses, who corroborate the victim's testimony, telephone and social media records, medical records, MDC records, and other documentary evidence. Accordingly, the strength of the government's case clearly favors detention.

III. The Case Also Involves a Serious Risk of Flight and Obstruction of Justice

In addition to the facts set forth above, the defendant constitutes a serious flight risk due the lengthy prison term he faces. Based on the charges in the indictment, the defendant faces a maximum term of life imprisonment. The government currently estimates that the defendant's sentencing range under the United States Sentencing Guidelines will be between 292 to 365 months (i.e., between 24.3 and 30.4 years). The likelihood of such a lengthy sentence provides a strong motive for the defendant to flee (as well as to obstruct justice), especially in light of the strength of the evidence in this case. See United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (finding the possibility of a "severe sentence" heightens the risk of flight).

In addition, the defendant has demonstrated that he is prone to flight by his conduct following his April 2016 assault of a female driver on FDR Drive described above. Notably, after damaging the victim's vehicle and punching her twice in the face, the defendant fled the scene of his crime. He has also demonstrated he is prone to obstruct justice through his efforts to intimidate and scare Jane Doe to prevent her from reporting the

11

defendant's conduct to others, including when the defendant believed an investigation of his conduct might be forthcoming.

As a result, the government has demonstrated by a preponderance of the evidence that, if released, there is a serious risk that the defendant will flee or attempt to obstruct justice.  See 18 U.S.C. § 3142(f)(2); United States v. Madoff, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009) (preponderance of evidence standard applies to determination of both risk of flight and risk of obstruction of justice).

## CONCLUSION

For the foregoing reasons, the government respectfully submits that the defendant should be detained pending trial.

Dated:   Brooklyn, New York
         May 25, 2017

>                    Respectfully submitted,
>
>                    BRIDGET M. ROHDE
>                    ACTING UNITED STATES ATTORNEY
>                    Eastern District of New York
>                    Attorney for Plaintiff
>                    271 Cadman Plaza East
>                    Brooklyn, New York 11201
>
>         By:        /s/
>                    Nicole Argentieri
>                    Marisa Seifan
>                    Nadia Shihata
>                    Assistant United States Attorneys
>                    (718) 254-7000

12