UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                    Docket. No.  17 Cr. 281 (ERK)

        - against -                                  **DECLARATION**

CARLOS MARTINEZ,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK           )
COUNTY OF NEW YORK      :   ss .:

      Anthony L. Ricco, Esq., pursuant to Title 28, United States Code, section 1746, hereby declares under the penalties of perjury:

      I am counsel for the defendant, Carlos Martinez, and I make this declaration in support of his motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  The grounds upon which Carlos Martinez seeks relief under Rule 33 is that the government withheld *Brady* information from the defense, which has served to undermine the confidence in the verdict reached by the jury on several counts of conviction.

## I.  Introduction

      During the trial of Carlos Martinez, there was testimony by his accuser, known to the jury as "Maria," wherein she described a sexual encounter, which she said had taken place between her and Carlos Martinez prior to her departure from the Metropolitan Detention Center in April 2016. During her trial testimony before Judge Korman,"Maria" provided explicit details of the sexual encounter, itself, along with the events which immediately preceded the sexual encounter and those which immediately followed.  "Maria" testified at trial that on a single occasion in the month of April 2016, she was grabbed and forcibly raped by Carlos Martinez, a Lieutenant employed by the Bureau of Prisons, while she was cleaning the Lieutenant's office at the Metropolitan Detention Center, where she was detained as sentenced prisoner.  On January 19, 2018, the jury returned a

guilty verdict on all twenty counts of the indictment.

On August 22, 2018, Carlos Martinez made a post-verdict *Brady* demand to determine whether the government failed to provide the defense with information which should have been disclosed pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Giglio v United States*, 405 US 150, 154-155 (1972) and *Kyles v. Whitely*, *514 U.S. 419 (1995).* Specifically, Carlos Martinez made an inquiry into whether, at anytime during the proceedings against Carlos Martinez, did the government ever provide Carlos Martinez with the disclosure of *any* interviews between the government prosecutors and/or the case agents and an inmate/detainee named Jane Doe No. 4, concerning the events of the April 2016 sexual encounter, as alleged in counts 17 through 20 of the indictment, which was the subject of the testimony of "Maria."

On September 5, 2018, the government responded that it "inadvertently" failed to disclose to Carlos Martinez, that prior to his trial, there was, in fact, an interview with an individual known as Jane Doe No. 4, and the government subsequently provided Carlos Martinez with a copy of the memorandum of the interview dated April 27, 2017. The memorandum of the interview revealed that the government withheld from the Carlos Martinez material information that Jane Doe No. 4 had provided, which was related to whether "Maria" was forcibly raped on a date in April of 2016, as she had claimed.

The memorandum of the interview revealed that Jane Doe No. 4 provided an account of the circumstances surrounding the April 2016 sexual encounter, which was inconsistent with, and contrary to the "Maria's" testimony that she was forcibly raped. The information that the government "inadvertently" failed to disclose had the following effect: (1) it precluded Carlos Martinez from impeaching "Maria" during cross examination on prior inconsistent statements; (2) it thwarted Carlos Martinez from affirmatively presenting testimony of a witness which materially

2

contradicted the testimony of 'Maria;" (3) it concealed from Carlos Martinez material information that his counsel could have further investigated and developed into additional facts to demonstrate that the encounter with "Maria" was not a forcible act; and (4) it prevented his counsel from using such information to provide contrary arguments to the jury during closing arguments.  Set forth in detail below, in constitutional terms, the government's failure to disclose this highly relevant and material *Brady* evidence violated Carlos Martinez's Sixth Amendment right to cross examination and his Sixth Amendment right to present evidence on his own behalf, resulting in a violation of due process.  As a result, and for reasons set forth in further detail below, Carlos Martinez now seeks a new trial.

## II.   Arguments in Support of the Application for a New Trial

In this case, Carlos Martinez asserts a violation of his rights protected under the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny; in particular *Kyles v. Whitley*, 514 U.S. 413 (1995).  The United States Supreme Court case authority clearly supports a finding that the observations and statements made by Jane Doe No. 4 constitute *Brady* material and as such, triggers the prosecution's obligation to provide the corresponding identification and contact information to the defense.  *Kyles v. Whitely*, *514 U.S. 419 (1995)*.  Although there is no precise deadline for when *Brady*/*Giglio* information must be disclosed, the Second Circuit has held that Brady requires disclosure "in time for its effective use at trial."  See, *United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008) (internal quotation marks omitted); *accord DiSimone v. Phillips*, 461 F.3d 181, 196–97 (2d Cir. 2006).

The Supreme Court has long ago held that the prosecutor's failure to turn over *Brady* information is prosecutorial misconduct, notwithstanding the "good faith or bad faith" of the prosecutor.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  In this case, the government has stated that it

"inadvertently" failed to disclose the interview of Jane Doe No. 4.  Nevertheless, the impact of the government's failure to disclose the existence of this *Brady* witness thwarted and deprived Carlos Martinez of his right to investigate and develop his defense, and to present evidence via his right to compulsory process and to cross examination.

Government's Theory of the Case - Why Jane Doe's Testimony Constitutes Material Evidence

The government's theory in this case was that Carlos Martinez committed multiple acts of rape upon an individual known as "Maria" on various dates from December 2015 to April 2016.

The twenty count indictment specifically charged that during a period of five months, from December 2015 to April 2016, Carlos Martinez, a supervisor within the Bureau of Prisons, used his position of authority, coupled with physical force and fear, to repeatedly rape "Maria," a sentenced female prisoner detained at the Metropolitan Detention Center in Brooklyn, New York.

Fifteen of the indictment's twenty counts contained an essential element that required the jury to make a specific finding, beyond a reasonable doubt, that Carlos Martinez used *physical force* to commit various acts of aggravated sexual abuse.[1]  See, 18 U.S.C.§ 242 (aggravated sexual abuse or an attempt) and 18 U.S.C. § 2241(a)(1)(using force against another);  See also, *The Courts Jury Instructions*, Trial Transcript, pages 1084, 1087, 1088, 1089 and 1090.  Each of these counts required a finding of forcible rape.

In order to support its theory, and to establish the element that Carlos Martinez used physical force to commit various acts of aggravated sexual abuse, the government relied upon the

---

[1]    Specifically, the indictment charged Carlos Martinez with the deprivation of the civil rights of a detainee identified as Jane Doe, by using force to commit various aggravated acts of sexual abuse against her in violation of 18 U.S.C.§ 242 (Counts 1, 5, 9, 13, 17, 18).  The indictment also charged Carlos Martinez with multiple counts of aggravated sexual abuse in a federal prison, by causing Jane Doe to engage in various sexual acts, by using force against her. 18 U.S.C. § 2241(a)(1)(counts 2, 3, 6, 7, 10, 11, 14, 15, 19).  Finally, the indictment charged Carlos Martinez with multiple counts of sexual abuse of a ward by causing Jane Doe to engage in various sexual acts, while she was in official detention at a federal prison and when she was under custodial, supervisory and disciplinary authority in violation of 18 U.S.C. §2243(b)(counts 4, 8, 12, 16, 20 - no finding of force required).

testimony of "Maria," who testified that she had a job at the jail as a cleaner, and that part of her job

responsibilities were to clean the Lieutenant's Office on the second floor of the Metropolitan

Detention Center.  During the trial, "Maria" testified that Carlos Martinez used physical force to

cause her to engage in various sexual acts with him against her will on multiple occasions.  See, Trial

Transcript, page 107, line 11; page 149, line 8; 162, line 4; page 179, line 7; page 220, line 24; page

221, line 1; page 321, line 19; page 322, line 3; page 322, line 10; page 328, line 22; page 329, line 7;

page 330, line 18; page 332, line 4; page 333, line 21; and page 396, line 13.  "Maria" testified that

each forcible act of sexual abuse took place inside the Lieutenant's Office on the second floor of

Metropolitan Detention Center, where she had been summoned to clean, and that each encounter

took place outside the presence of any other person.

       In fact, the government did not call any other person who testified that they actually

observed "Maria" being physically forced to engage in sexual acts with Carlos Martinez.  See, e.g.,

Trial Transcript, page 459, line 13 to 15.  The government did not present evidence of torn clothing,

photographs of bruising, video surveillance, or medical records to corroborate "Maria's" testimony

that she was forcibly raped.  Instead, the government introduced a plethora of photographs

depicting various locations at the Metropolitan Detention Center, several charts, volumes of records

of work detail schedules, prisoner visitation records, time sheets. and other Bureau of Prisons

records, to support and corroborate various aspects of "Maria's" testimony.  But no direct evidence

capturing Carlos Martinez engaged in forcible rape and/or sodomy.  Only the testimony of "Maria."

       The government called several Bureau of Prisons staff members and civilian employees in

order to establish corroboration that "Maria" was subjected to unwanted, physically forced sexual

acts, and the government presented the testimony of sentenced inmates.  During the trial, "Maria"

testified that she had discussed the forced sexual encounters with female inmates at various times,

sometimes before and/or after the sexual encounters.  See, Trial Transcript, page 126, line 11, pages

118, line 23 through 124, line 23.  "Maria" testified that the women had various reactions to her claims that she had been forcibly raped and sodomized by Carlos Martinez.  "Maria" testified by identifying the names of the women present during those conversations as Danilda Osorio, Melva Vasquez and Kiara Maldonaldo, and government called them as witnesses.

However, the government did not call Jane Doe No. 4 as a witness at the trial, although her interview establishes that she, just like Danilda Osorio, Melva Vasquez and Kiara Maldonaldo, also had direct conversations with "Maria," both prior to and after the encounter where Maria testified she was forcibly raped.  Nor did "Maria" ever mention, during her exhaustive and detailed direct trial testimony, the presence of Jane Doe No. 4 at any of her conversations with female detainees before or after she had a sexual encounter with Carlos Martinez.  After reviewing the memorandum of the April 18, 2017 interview, it is not difficult to conclude that the reason why Jane Doe No. 4 was not called as a witness, nor ever mentioned as being present during conversations about Lieutenant Carlos Martinez.  Jane Doe No. 4's account and observations of the events which took place prior to and after the April 2016 sexual encounter are inconsistent with, and in direct contradiction of the trial testimony of "Maria," the government's star witness.

The April 2016 Encounter

"Maria" had a clear recollection of the events which took place on the date in April 2016 when she claimed that she was forcibly raped by Carlos Martinez.  See, Trial Transcript, page 209, line 8 through page 221, line 16.  "Maria" provided explicit details concerning the events which took place before, during and after the sexual encounter she had with Carlos Martinez during April 2016. See, Trial Transcript, page 209, line 1 to line 13.  "Maria" recalled the circumstances that summoned her to the Lieutenant's office, along with the names of the individuals whom she spoke to before departing to go to the Lieutenants's office.  See, Trial Transcript, page 210, line 10 to page 212, line

6.  "Maria" provided detail that she was escorted back and forth to the Lieutenant's office by a Bureau of Prisons Corrections Officer.  See, Trial Transcript, page 211, line 25 to page 212, line 5. Finally, "Maria" provided specific testimony of the events which took place during the forced rape, and the conversations she had upon return to her unit after the forcible rape.

"Maria" testified that after speaking to an inmate named Felicia, she was directed to go clean the Lieutenant's office, along with another inmate named Odis De La Cruz.  See, Trial Transcript, page 210, line 25.  "Maria" testified that she saw Odis De La Cruz in their unit, and that they had a conversation about going to clean.  See, Trial Transcript, page 210, line 25.  "Maria" testified that Odis De La Cruz told her that she could not go with "Maria" to clean, since it was her visiting day, and that she was going to have a visitor.

> Q.   And what, if anything, did she tell you when she saw you?
>
> A.   She told me she could not go with me to clean.
>
> Q.   Did she say why?
>
> A.    She said because she was going to have a visitor.
>
> Q.    And was this day a visiting day at the Metropolitan Detention Center?
>
> A.   Yes.
>
> Q.   Did you go to clean that day?
>
> A.   Yes.
>
> Q.   And did you go alone or with any other inmates?
>
> A.   I went alone.

See, Trial Transcript, page 211, lines 7 to 16.    The government did not call either Felicia nor Odis De La Cruz as a witnesses.                                          ,

"Maria" testified that after these conversations, she was escorted to the cleaning area alone, by a Bureau of Prisons Corrections Officer who left her, after he transported her to the Lieutenant's Office.  See, Trial Transcript, page 211, line 17 to page 212, line 2.  "Maria" testified that there was a

Lieutenant Nunez present at the Lieutenant's Office when she arrived.   "Maria" testified to having a conversation with Lieutenant Nunez when she began cleaning, and claimed that Lieutenant Nunez was aware that "Maria" was leaving the Metropolitan Detention Center; and that Lieutenant Nunez also asked her about another female detainee, Danilda Osorio,  who, at that juncture in April 2016, had already been discharged or transferred from the Metropolitan Detention Center.  See, Trial Transcript, page 215, lines 10 to 25.  After this conversation, "Maria" testified that Lieutenant Nunez left the office area.  See, Trial Transcript, page 215, line 25.

"Maria" testified that shortly thereafter, Lieutenant Martinez entered the cleaning area and asked "Maria" why she was speaking to Lieutenant Nunez; that he grabbed her by the arm and began an unwanted forcible sexual attack.  See, Trial Transcript, page 217, lines 4 to 19.  "Maria" testified that Carlos Martinez forced himself upon her by kissing her, groping her, and pulling down her pants.  See, Trial Transcript, page 218, lines 22 to 25.  "Maria" testified that Carlos Martinez held her by her arms and forced her to floor on all fours, and penetrated her vagina. See, Trial Transcript, page 219, line 7 to page 220, line 2.  "Maria" testified that Carlos Martinez did not ejaculate inside her on this occasion.  See, Trial Transcript, page 220, lines 3 to 5.  "Maria" testified that Carlos Martinez had stated that the reason he did not ejaculate inside her was "since you're going to immigration, it could be that they give you a checkup."  See, Trial Transcript, page 220, lines 3 to 5. "Maria" testified that Carlos Martinez inserted his penis inside her vagina against her will and that he forcibly raped her.  See, Trial Transcript, page 220, line 23 to page 221, lines 5.

Q.   Did he force you to have sex with him that day?

A.   Yes.

See, Trial Transcript, page 221, lines 1 to 2.  "Maria" even recalled that Carlos Martinez had an injured finger, along with other details.  "Maria" further testified that when she returned to her unit she saw Odis De La Cruz and was told that she did not have a visit that day after all. See, Trial Transcript, page 221, lines 8 to 16.  See, Trial Transcript, page 211, lines 7 to 16.

8

As stated above, "Maria" provided specific testimony of the events which took place during the forcible rape, including the names of the individuals she spoke with prior to going to the Lieutenant's Office, the conversation that she had with Lieutenant Nunez when she arrived at the Lieutenant's Office, and those individuals whom she spoke with upon her return to her housing unit after the forcible rape. However, at no time did "Maria" testify to having a conversation with Jane Doe No. 4 on that date, either before or after the sexual encounter. Nor did "Maria" provide any testimony that a female inmate named Jane Doe No. 4 was even present in the housing unit on that date. And finally, notwithstanding the contents of the observations and accounts set forth in the memorandum of the April 18, 2017 interview, the prosecutors never even asked "Maria" whether there was any other additional female inmate present, or who engaged her in a conversation, either prior to or after the April 2016 sexual encounter. Neither this court, the defense, nor the jury were ever made aware of material information in the possession of the government prosecutors; to wit: that there was, in fact, another female inmate who engaged "Maria" in conversation, both before and after the April 2016 sexual encounter. In this case, the government took full advantage of its failure to disclose the observations of Jane Doe No. 4. The government secured favorable evidentiary rulings which permitted "Maria" to testify on direct examination to the April 2016 episode and several events without impeachment, and thwarted the defense an opportunity to call an important witness who disputed "Maria's" account of relevant and material events, along with the argument that these sexual encounters engaged in by "Maria" were not the result of physical force.[2]

_____

[2]    In this case, the government used Rule 412, and the defense's lack of full knowledge of events, as described by Jane Doe No. 4, which the government had in its possession, as a shield and sword. The government filed an extensive pre-trial motion *in limine,* pursuant to Rule 412, which sought an order to preclude Carlos Martinez from introducing evidence regarding Jane Doe engaging in sexual acts or contact with anyone other than the defendant, or having any type of "sexual predisposition." During the April 18, 2017 interview, Jane Doe No. 4 provided information that was the direct subject of the government's preclusion motion (an encounter involving Lieutenant Perez, Jane Doe No.4 and Maria), and another episode involving a Bureau of Prison Officer named Adwapa, which was not included in the litany of episodes in which the government sought preclusion. Set forth in more detail below, the government made representations to the court and secured favorable evidentiary pre-trial and trial rulings based upon "Maria's" direct testimony in relation to the sexual encounter involving Lieutenant Perez, Jane Doe No.4 and Maria. However, the government withheld from the defense and the court Jane Doe No.4's account of that episode,

Interview of Jane Doe No. 4 on April 18, 2017

Jane Doe No. 4 was interviewed by members of the prosecution team and the investigating agents in this case on April 18, 2017.[3]  Although not present for the actual sexual encounter,  Jane Doe No. 4 was both an eyewitness to, and a participant in conversations "Maria" had with female detainees in her housing unit (including Odis De La Cruz) just prior to the episode, wherein "Maria" claimed that she was the subject of a forcible rape in April of 2016.  Jane Doe No. 4 also had a conversation with "Maria" after the episode, wherein "Maria" claimed that she was the subject of a forcible rape in April of 2016.   As an eyewitness and participant to conversations,  Jane Doe No. 4 provided the members of the prosecution team and the investigating agents the reasons why "Maria" stated she went to the Lieutenant's Office on date near the end of April 2016, prior to her scheduled discharge from the Metropolitan Detention Center on April 29, 2016.  See, Trial Transcript, page 209, line 1 to 14.

"Maria's" testimony of the circumstances, which took place prior to her going down to the Lieutenant's Office, her reasons for going down to the Lieutenant's Office, and the individuals

_____

which was inconsistent with and contradicted "Maria's" testimony.  A review of the trial transcript, along with the benefit of Jane Doe No. 4's observations, shows that the government's representations to the court concerning the sexual encounter between Lieutenant Perez, Jane Doe No. 4 and Maria was not accurate - at least not according to the statements made by Jane Doe No. 4 during the April 18, 2017 interview.  See, Trial Transcript, page 343, line 2 to 18; page 345, line 9 to 346, line 2, and compare with Jane Doe No. 4's account of the same encounter which comprises 5 paragraphs set forth on page 3 of memorandum dated April 28, 2017.

[3]       The interview of Jane Doe No. 4 was conducted by Assistant United States Attorneys Nadia Shihata and Marisa Seifan, and present during the interview was United States Department of Justice Office of the Inspector General, Senior Special Agent Laura Riley.  AUSA Nadia Shihata conducted the direct examination of "Maria," which, as stated above, included detailed testimony about the April 2016 allegation of forcible rape.  Also present in the courtroom throughout "Maria's" testimony was Special Agent Laura Riley.  Therefore, the lead case agent and the lead prosecutor had actual knowledge of the interview of Jane Doe No. 4.  Notwithstanding a specific request for the pre-trial disclosure of precisely this type of evidence (See,ECF No. 26, 27 and 28 Motion for Discovery *of Brady-Kyles Evidence*), the government never disclosed to the defense that this interview took place (or provided a memorandum of the interview) until after a guilty verdict, and in reply to a post-conviction *Brady* demand via a letter dated September 5, 2018.  Nor did the government solicit from "Maria" during her direct trial testimony, that Jane Doe No. 4 was even present during her conversation(s) with other female inmates in relation to the April 2016 sexual encounter.

10

"Maria" spoke with, both prior to leaving for the Lieutenant's Office and upon her return to the housing unit on the date in April 2016,  are inconsistent with and contradicted by the observations and statements made by Jane Doe No. 4 during the interview on April 18, 2017.

<u>Conversations in The Unit Prior To Going To Clean</u>

"Maria" testified at trial that on a date in April 2016, just prior to her discharge from custody at the Metropolitan Detention Center and her transfer into Immigration custody, she saw Odis De La Cruz in their housing unit and that they had a conversation about going to clean the Lieutenant's office.  See, Trial Transcript, page 209, line 1 to 16 and, also page 210, line 25.  "Maria" testified that Odis De La Cruz told her that she could not accompany her to clean, since it was her visitation day and that she was expecting a visitor.  In response to a specific question about whether she went alone or with any other inmate, "Maria" testified that she went to clean alone.  See, Trial Transcript, page 211, lines 7 to 16.  "Maria" did not testify about speaking to any other person or any other person being present during the conversation with Odis De La Cruz.[4]  "Maria's" testimony is contradicted by Jane Doe No. 4.

During the April 18, 2017 interview, Jane Doe No. 4 informed the prosecutors and Special Agent Riley that "something was going on between her and Lieutenant Martinez."  Jane Doe No. 4 told the prosecutors and Special Agent Riley that a few days before "Maria" left the Metropolitan Detention Center, she ("Maria") was called to clean the hospital area."  Jane Doe No. 4 had a specific recollection, and recalled that Odis De La Cruz asked "Maria" "if she ("Maria") wanted her (De La Cruz) to go with her to clean."  "Maria" responded "*no.*"  Jane Doe No. 4 then asked "Maria," if she ("Maria") wanted her (Jane Doe No. 4) to go with her to clean, and "Maria" said "*no that she will go alone.*"  Jane Doe No. 4 recalled that "Maria" went to clean alone and that she returned

---

[4]      It is noteworthy that although "Maria" was specifically asked if she went alone or in the accompany of another female inmate, "Maria" was not asked whether she had a conversation with any other female inmate about accompanying her to clean the Lieutenant's office.

about two hours later on that day.  See, United States Department of Justice, Office of Inspector General, Memorandum of Investigation dated April 27, 2017, ¶ 2 and ¶3, page 1.

"Maria's" testimony (Trial Transcript, page 211, lines 7 to 16) is contradicted by Jane Doe No. 4's account and recollection of events.  According to Jane Doe No. 4, two different female inmates asked "Maria" if she wanted them to go with her to clean - Odis De La Cruz and Jane Doe No. 4.   "Maria" said no to both.  However, the government did not disclose the April 18, 2017 interview until after the trial, and upon a *post* verdict *Brady* demand by the defense.  As a result, defense counsel was deprived of an opportunity to impeach "Maria," deprived of an opportunity to investigate the presence of Jane Doe No. 4 and to utilize this Court's subpoena power to present affirmative proof to the contrary - a witness to "Maria's" self-serving, one sided testimony.  And, there is more.

Return To the Unit After Contact With Lieutenant Martinez

"Maria" testified that the only inmate whom she had a conversation with after the alleged forcible rape in April 2016 was Odis De La Cruz, and that she was informed that Odis De La Cruz did not have a visit that day, after all.  See, Trial Transcript, page 221, lines 8 to 16; See also, Trial Transcript, page 211, lines 7 to 16.  The impression left with the jury was un-impeached and unchallenged - happenstance and just bad luck caused her to be alone in the Lieutenant's office with a man who she described as a "pig" (Trial Transcript pages 176, line 25 to page 177, line 2; page 202, line 1 and page 330, line 21) that had last forcibly raped her two months earlier.[5]  "Maria" makes no mention of a conversation with Jane Doe No. 4, nor is there is a question posed to "Maria" as to whether she spoke with any other female inmate about her encounter with Lieutenant Martinez, while she remained at the Metropolitan Detention Center.

However, during the April 18, 2017 interview, Jane Doe No. 4 stated that she did, in fact,

---

[5]     "Maria" testified at trial that she did not have any sexual contact with Carlos Martinez from the end of February 2016 until a day near the end of April 2016.  See, Trial Transcript, page 209, lines 1 to 13.

have a conversation with "Maria," wherein Jane Doe No. 4 specifically asked "Maria" "why she did

not want De La Cruz or her (Jane Doe No. 4), to come along (with her) to clean."  "Maria's"

response, according to Jane Doe No. 4, was astonishing in view of the trial testimony solicited by

the government.  According to Jane Doe No. 4, "Maria" responded that "*it was because she was leaving

and was having relations with that man.*"  According to Jane Doe No. 4, this was the first time "Maria"

told Jane Doe No. 4 "*about this.*"  See, United States Department of Justice, Office of Inspector

General, Memorandum of Investigation dated April 27, 2017, ¶ 3, page 1.

A permissible inference to be drawn from the information provided by Jane Doe No. 4

during the April 18, 2017 interview, is that "Maria" wanted one last opportunity (without the

presence of Odis De La Cruz or Jane Doe No. 4) to be alone with Lieutenant Martinez, with whom

she was having relations.  A timely and proper disclosure of the account provided by Jane Doe No.

4 during the April 18, 2017 interview would have given Carlos Martinez a fair opportunity to present

facts before the jury, that the April 2016 encounter did not result from happenstance or bad luck,

but rather was purposefully orchestrated for the purpose of a wanted sexual encounter, and not for

the purpose of forcible rape.[6]

The suppression of the existence of Jane Doe No. 4 in the housing unit, and conversing with

"Maria" prior to her arrival at the Lieutenant's office in April, deprived Carlos Martinez of the

opportunity to make a fair and reasoned arguments based upon the actual facts.

The government successfully presented witnesses to establish that "Maria" loathed and

---

[6]      Although in the introductory paragraph of the April 18, 2017 interview, it is stated that Jane
Doe No. 4 was "previously interview" and that "additional information" was being provided on the date of
the interview, the government has not provided a memorandum or notes from that prior interview or the
notes from the April 18, 2017 interview.  This is significant since there were at least three law enforcement
persons present during the April 18, 2017 interview, and the memorandum appears to be typed 10 days after
the interview, since the April 18, 2017 interview is a follow up interview involving Jane Doe No. 4.  In
addition, the defense has not been provided with any documentation that there were any further or follow up
interviews with Jane Doe No. 4 after April 18, 2017.  This is significant, since Jane Doe No. 4's account of
events completely contradicts "Maria's" trial testimony in relation to the April 2016 allegation of forcible
rape.  This inconsistency certainly should have become clear and noted, when the government was preparing
its motion in limine in this case, and/or later, when Jane Doe No. 4 was prepped for the Eugenio Perez trial.

feared going to clean the Lieutenant's office.  Danilda Osorio testified that she would see "Maria" before going to clean Lieutenant Martinez's office, and that she was not happy to go, that she would be upset and tired of going.   See, Trial Transcript, page 567, 10 to 18.  "Maria" testified that she did not want to go clean the Lieutenant's Office, because she knew that going to clean meant that she was going to be raped again, and that's is what happened.  See, Trial Transcript, page 169, 17 to 25.

According to the information provided by Jane Doe No. 4 during the April 18, 2017 interview, "Maria" was not upset about going to clean the Lieutenant's Office, nor fearful of being raped.  Instead, "Maria" willingly went to clean alone, after not one, but two inmates asked to join her in cleaning.   Maria" told Jane Doe No. 4 that she wanted to be alone *"because she was leaving and was having relations with that man."*  The prosecution failed to provide this important interview to Carlos Martinez, thereby depriving him of a fair opportunity to put before the jury facts which contradicted "Maria's" testimony, and to which would have afforded counsel a fair opportunity to directly challenge the forcible rape specifically charged under counts 17, 18 and 19 of the indictment; and also raise reasonable doubt about reliability of the government's proof and overall theory of unwanted forcible rape in relation to all other charges where that claim was raised.

Suppressing the existence of Jane Doe No. 4 and her conversations with "Maria" provided the government with another advantage.  In April 2016, Danilda Osorio, Melva Vaquez and Kiara Maldonaldo were no longer inmates housed at the at the Metropolitan Detention Center, and therefore could not serve as witnesses to corroborate or support "Maria's" claim of forcible rape at that time.  See, Trial Transcript, page 640, line 15 (Kiara Maldonaldo); page 545, line 16 (Danilda Osorio); page 572 line 12 (Danilda Osorio); page 329, line 4 to 5 (Melva Vasquez).  However, at the first opportunity that "Maria" was later reunited with her friends in Immigration custody, she showed them bruises on her arm as evidence of a forced sexual encounter.  See, Trial Testimony, page 229, line 7 to 20 (Melva Vasquez) and page 593, line 17 to 21 (Danilda Osorio).

While the government presented testimony that the female detainees, Danilda Osorio and

Melva Vasquez, observed bruise marks on "Maria's" arm when she arrived at Immigration, thereby

providing corroboration of "Maria's" testimony that she was engaged in an unwanted forcible sexual

encounter, there is no mention - in the April 18, 2017 interview - that Jane Doe No. 4 observed any

marks on "Maria's" arm, nor is there mention of any other fact to support a conclusion that

"Maria's" encounter in April 2016 was anything other than a wanted rendevous with a man whom

she was having relations with.  See, United States Department of Justice, Office of Inspector

General, Memorandum of Investigation dated April 27, 2017, ¶ 3, page 1.

The failure to disclose the existence of Jane Doe No. 4 as a witness to the events at the

Metropolitan Detention Center in April 2016 denied Carlos Martinez a fair to opportunity to

challenge whether those bruise marks, if they existed at all, were connected to the encounter that

took place with Carlos Martinez.

There also appears to be no follow up interview with Jane Doe No. 4, after April 18, 2017,

on matters related to "Maria."  Notwithstanding that this case involved the comparison of

voluminous Bureau of Prisons work detail and assignment records, various Metropolitan Detention

Center inmate visitation records, voluminous Face Book records, the review of voluminous

photographs with witnesses, dozens of interviews with Bureau Prison Correction Officers of various

ranks and assignments, dozens of interviews with female detainees and the review of those female

detainees interviewed to support the filing of an accurate pre-trial motion *in limine* seeking relief

pursuant to Rule 412, *inter alia.*, no prosecutor or case agent ever bothered to conduct a follow up

interview with Jane Doe No. 4, to clarify or resolve any of the obvious inconsistencies between the

observations disclosed during the April 18, 2017 interview and the testimony of "Maria."[7]

---

[7]     Although Jane Doe No. 4 was prepped for the trial in *United States v. Eugenio Perez*, 17 Cr.
280 (KAM), and called as a witness, at no time did the same government prosecutors address these glaring
inconsistencies or decide, on their own, to provide the April 18, 2017 interview to counsel for Carlos
Martinez.  Were this court to conduct a hearing, upon information and belief, there would be an admission
that this interview was, in fact, reviewed with Jane Doe No. 4 prior to her testimony in the *Perez* trial before
Judge Matsumoto, and that the memorandum was not turned over, despite the broad obligation imposed
upon government prosecutors, pursuant to the Department of Justice, United States Attorneys' Manual, § 9-
5.001.

Furthermore, there is not any notation in the memorandum of the April 18, 2017 interview, that Jane Doe No. 4 was asked to explain what was meant by "relations" during the interview.   The word "relations" was not a term used by Danilda Osorio, Melva Vasquez or Kiara Maldonaldo during their testimony describing "Maria's" conversations and appearances, after and/or before, "Maria's" encounters with Carlos Martinez.  To the contrary, each women used provocative descriptive terms such as "penetrate," "grab," "force," "crying," "anxiety," "fear," "change in behavior" during their prepared trial testimony.  These terms were in response to questions solicited to support an inference that "Maria" was the subject of unwanted, forced sexual acts.  Remarkably, though, the interview of the one witness who did not support this view or the government's theory was not disclosed to the defense until a post trial *Brady* demand was made.

The Testimony of Jane Doe No. 4 was Relevant and Material

The failure to disclose information provided by Jane Doe No. 4 during the April 18, 2017 interview deprived Carlos Martinez of the ability to present at trial relevant and material information on the issue of whether the evidence was sufficient to support a finding of forcible sexual encounters.

Evidence is relevant if it has a tendency to prove the existence of a material fact, a fact of consequence to the determination of the case.  A material fact is a fact of consequence to the determination of the case.  Material facts include those facts essential to establishing the elements of the charged offense.  This includes those facts from which those ultimate facts can be inferred. New York Evidence Handbook, Rules, Theory and Practice, b Martin, Capra and Rossi, §4.1.1, pages 120-122.

As stated above, fifteen of the twenty counts in the indictment contained an essential element that required the jury to make a specific finding that Carlos Martinez used *physical force* to

commit various acts of aggravated sexual abuse.[8]  See also, *The Courts Jury Instructions*, Trial Transcript, pages 1084, 1087, 1088, 1089 and 1090.   Each count required a finding of forcible rape, and "Maria" testified that Carlos Martinez used fear and physical force to cause her to engage in various sexual acts with him against her will on multiple occasions.  Therefore, the observations of witnesses provide the jury with information probative to establishing whether "Maria" was in fear or exhibited signs of being subjected to physical force - such as anxiety, crying, change in behavior, etc.  In fact, the government solicited such information from its witnesses.  See, for example Trial Transcript, pages 446, line 28 to page 449, line 24; page 560, line 23 to 25, page 561, line 4 to 12; page 633, line 12; page 640, line 17 to 21.

Naturally, the conversations that "Maria" had prior to going to clean the Lieutenant's Office on the last occasion in April 2016, and her conversations upon her return from cleaning, along with "Maria's" stated reasons, during those conversations, for wanting to go (and actually going) alone to the Lieutenant's Office, are all material to whether "Maria" was placed in fear, threatened and subjected to a forced sexual encounter - as she claimed during her testimony.[9]

---

[8]     Specifically, the indictment charged Carlos Martinez with the deprivation of the civil rights of a detainee identified as Jane Doe, by using force to commit various aggravated acts of sexual abuse against her in violation of 18 U.S.C.§ 242 (Counts 1, 5, 9, 13, 17, 18).  The indictment also charged Carlos Martinez with multiple counts of aggravated sexual abuse in a federal prison, by causing Jane Doe to engage in various sexual acts, by using force against her. 18 U.S.C. § 2241(a)(1)(counts 2, 3, 6, 7, 10, 11, 14, 15, 19).  Finally, the indictment charged Carlos Martinez with multiple counts of sexual abuse of a ward by causing Jane Doe to engage in various sexual acts, while she was in official detention at a federal prison and when she was under custodial, supervisory and disciplinary authority in violation of 18 U.S.C. §2243(b)(counts 4, 8, 12, 16, 20 - no finding of force required).

[9]     As stated above, fifteen of the twenty counts in the indictment contained an essential element, which required the jury to make a specific finding that Carlos Martinez used *physical force* to commit various acts of aggravated sexual abuse.  See also, *The Courts Jury Instructions*, Trial Transcript, pages 1084, 1087, 1088, 1089 and 1090.  Each of these counts required a finding of forcible rape, and "Maria" testified that Carlos Martinez used fear and physical force to cause her to engage in various sexual acts with him against her will on multiple occasions.  Therefore, the observations of witnesses provide the jury with information probative to establishing whether "Maria" was in fear or exhibited signs of being subjected to physical force - such as anxiety, crying, change in behavior.   In fact, the government solicited such information from its witnesses.   See, for example Trial Transcript, pages 446, line 28 to page 449, line 24; page 560, line 23 to 25, page 561, line 4 to 12; page 633, line 12; page 640, line 17 to 21.

Testimony of Women Detained at the Metropolitan Detention Center

During its case in chief, the government presented the testimony of Danilda Osorio, Melva Vasquez and Kiara Maldonaldo.  These three witnesses were called by the government to establish facts upon which the jury could infer that "Maria" was subjected to unwanted forcible sexual encounters with Carlos Martinez, while she was cleaning the Lieutenant's office.  The foundation for the admission of the testimony of Danilda Osorio, Melva Vasquez and Kiara Maldonaldo was supplied by the testimony of "Maria."

"Maria" testified that she had conversations with other female inmates at the Metropolitan Detention Center, and that she told them she was physically forced into sexual acts by Carlos Martinez while she was cleaning the Lieutenant's office.  See, Trial Transcript, page 325, line 19 to 25.  "Maria" identified those women as Danilda Osorio, Melva Vasquez and Kiara Maldonaldo. Trial Transcript, page 137, line 14 to 17; page 328, line 25.[10]

Danilda Osorio, Melva Vasquez and Kiara Maldonaldo each testified to conversations that they had individually and/or in a group, both prior to and/or after "Maria" complained of unwanted sexual contact with Carlos Martinez.  The women testified that "Maria" told them she was forcibly penetrated; (Trial Transcript, page 633, line 4 to page 634, line 24 - Kiara Maldonaldo); that "Maria" showed them bloody panties (Trial Transcript, page 633, line 4, page 634, line 18 - Kiara Maldonaldo); that "Maria" was upset and constantly crying - something had happened to her; (Trial Transcript, page 561, line 4 to 12 - Danilda Osorio; page 563, line 4 to 20 - Danilda Osorio; page

---

[10]        However, "Maria" never testified to having a conversation with Jane Doe No. 4 about her sexual encounters, nor did she ever identify Jane Doe No. 4 as being present when she was having conversations with the other women about her sexual encounters, or being present in any conversations about cleaning the Lieutenant's Office in general.  Jane Doe No. 4 was conspicuously absent from the totality of "Maria's" testimony.  And, notwithstanding their presence at the interview on April 18, 2017, the prosecutors did not ask "Maria" or any of the other women about the presence of Jane Doe No. 4 at all, even though there was testimony that "Maria" had a conversation with someone named "Felicia," about going down to clean the Lieutenant's Office in April 2016.  There were simply no questions about the presence of or "Maria's" conversations with Jane Doe No. 4.  See, Trial Transcript, page 210, line 22 to page 211, line 2.

446, line 25 to page 449, line 24 - Melva Vasquez); that "Maria" was saddened by the encounters,

and changed her social habits, staying in bed and not socializing as she did previously (Trial

Transcript, page 640, line 17 to 21); that 'Maria" had anxiety and fear (Trial Transcript, page 560,

line 23 to 25 - Danilda Osorio); that she was often crying (Trial Transcript, page 563, line 19 to 20 -

Danilda Osorio);  that on one occasion "Maria" spoke of being grabbed and penetrated from behind

and that she appeared to be "freaked out;" (Trial Transcript, page 633, line 4 to 25; page 636, line 13

to 16 - Kiara Maldonaldo); that during a conversation the day after one such encounter, "Maria"

stayed in bed and did not want to work, (Trial Transcript, page 640, line 17 to 21); and finally, that

on one occasion, in Immigration custody, "Maria" showed them bruises and finger marks on her

arm, where Carlos Martinez had forcibly grabbed her when he penetrated her during the April 2016

sexual encounter;  (Trial Transcript, page 229, line 7 to 20 - "Maria"); page 593, line 17 to 21 -

Danilda Osorio).

The failure to disclose to the April 18, 2017 interview of Jane Doe No. 4, deprived Carlos

Martinez of the ability to put before jury the testimony of a material witness whose observations

contradicted and exposed the trial testimony of "Maria," that she was forcibly raped during her

sexual encounter with Carlos Martinez in April 2016 - at a time period where Danilda Osorio, Melva

Vasquez and Kiara Maldonaldo were no longer being detained at the Metropolitan Detention

Center.  See, Trial Testimony, page 566, line 19 to 25.   The testimony of Jane Doe No. 4 is every bit

as much relevant and material as the testimony of the government witnesses Danilda Osorio, Melva

Vasquez and Kiara Maldonalo.

The Timing of the Disclosure of the April 18, 2017 Interview

Citing *Kyles v. Whitley*, 514 U.S. 419 (1995), Carlos Martinez filed a pre-trial *Brady* demand,

seeking disclosure of precisely the type of information set forth by Jane Doe No. 4 during the April

18, 2017.[11]   In *Kyles* the Supreme Court placed an affirmative duty upon the prosecutors to specifically inquire of each investigating officer whether he or she is aware of any such exculpatory information.  *Kyles v. Whitley*, supra, 514 U.S. at 438, 509.  In addition, as alluded to above, the Department of Justice, United States Attorneys' Manual, § 9-5.001 sets forth a broader concept of prosecutorial responsibility for government prosecutors, mandating the disclosure of information inconsistent with any element of any crime charged against the defendant, regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime, and mandating the disclosure of any information that either casts a substantial doubt upon the accuracy of any evidence - including but not limited to witness testimony - the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of other prosecution evidence (in this case the government's motion *in limine* seeking relief pursuant to Rule 412).  Notwithstanding the defense's specific demand for precisely the type of evidence discussed in Supreme Court case authorities and the Department of Justice, United States Attorney Manual, no such inquiry or search was conducted by the prosecutors in this case.

In addition, it is a chilling reality that had Eugenio Perez entered a guilty plea instead of electing to proceed to trial in *United States v. Eugenio Perez*, 17 Cr. 280 (KAM), Carlos Martinez would never have discovered that the April 18, 2017 interview had ever taken place.  The government insisted that the trial of Carlos Martinez precede the trial of Eugenio Perez.  The order of the commencement of two trials effectively served to prevent Carlos Martinez from having any

---

[11]     Carlos Martinez requested that the government provide him with the statements of any individual which are: [1] inconsistent or contradictory with prior statements made by those individuals; [2] inconsistent or contradictory with the statements of others interviewed; and [3] inconsistent or contradictory with the government's theory of prosecution in its case against him. The defendant requested the production of these statements or evidence, whether the government intends to call the individual as a witness.  See, Defense Memorandum, ECF Doc No. 27, at pages 6 through 8.

knowledge of the April 18, 2017 interview, and the material information contained therein.

The government did not call Jane Doe No. 4 as a witness in Carlos Martinez's trial, and therefore, did not provide any Rule 3500 materials related to prior statements of Jane Doe No. 4. While Danilda Osorio, Melva Vasquez and Kiara Maldonaldo were called as witnesses to corroborate sexual encounters alleged to have occurred on dates between December 2015 through February 2016, no such witnesses were called to describe conversations with "Maria" in relation to the April 2016 sexual encounter with Carlos Martinez.  Therefore, Carlos Martinez, relying upon the testimony of "Maria," as well as the information disclosed and arguments advanced by the government throughout the trial, (Trial Transcripts, page 343, line 2 to 18; page 345, line 9 to page 346, line 2, and page 348, line 25 to 349, line 9), had no idea that "Maria" was conversing with Jane Doe No. 4 before and after the sexual encounter at the end of April 2016; and had no idea that Jane Doe No. 4 provided a completely different account of the sexual encounter which took place between Lieutenant Perez, "Maria" and Jane Doe No. 4.  (Trial Transcripts, page 343, line 2 to 18; page 345, line 9 to page 346, line 2).

As a result of the foregoing facts and circumstances, Carlos Martinez must be granted a new trial, wherein he will provided a fair opportunity to challenge the government's motion to preclude evidence; a fair opportunity to impeach the government's witness; and a fair opportunity to affirmatively present evidence to challenge the government's theory of its prosecution - that he physically forced "Maria" to engage in unwanted sexual encounters.

WHEREFORE, your declarant prays for an Order granting the relief requested in the Notice of Motion, and for such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
       November 29, 2018

*Anthony L. Ricco*
      Anthony L. Ricco