1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,        : 17-CR-00281-RER
                                 :
                                 :
                                 :
        -against-                : United States Courthouse
                                 : Brooklyn, New York
                                 :
                                 :
                                 : Wednesday, January 8, 2025
CARLOS MARTINEZ,                 : 11:00 a.m.
                                 :
            Defendant.           :
                                 :
- - - - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR RESENTENCING
BEFORE THE HONORABLE RAMON E. REYES, JR.
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Government:    United States Attorney
                       Eastern District of New York
                       271 Cadman Plaza East
                       Brooklyn, New York 11201
                  BY:  RACHEL A. BENNEK, ESQ.
                       Assistant United States Attorney

For the Defendant:    THE LAW OFFICE OF ANTHONY L. RICCO
                       20 Vesey Street
                       Suite 400
                       New York, New York 10007
                  BY:    ANTHONY L. RICCO, ESQ.


Court Reporter:  Nicole J. Sesta, RMR, CRR, RPR
                 Official Court Reporter
                 E-mail:  NSestaRMR@gmail.com

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

*Proceedings*                                                      2

1       THE COURTROOM DEPUTY:  Criminal cause for

2   resentencing, docket number 17-CR-00281, United States of

3   America versus Martinez, the Honorable Ramon E. Reyes, Jr.

4   presiding.  Counsel for the government, please state your name

5   for the record.

6       MS. BENNEK:  Rachel Bennek for the United States.

7   Good morning, Your Honor.  With me at counsel table is

8   probation officer, Patricia Sullivan.

9       THE PROBATION OFFICER:  Good morning, Your Honor.

10      THE COURT:  Good morning.

11      THE COURTROOM DEPUTY:  And counsel for the

12  defendant, please state your name for the record.

13      MR. RICCO:  Yes.  Good morning, Your Honor.  Anthony

14  Ricco for Carlos Martinez, who is to my left.  I'm also joined

15  by my colleague, Mr. Steven Legon.  And the Court should know

16  that Carlos Martinez's aunt is present in the second row, and

17  has been to every single court appearance for the last five

18  years and she's here this morning, along with his nephew.

19      THE COURT:  Good morning, everyone.  We're here

20  today for the resentencing of Carlos Martinez following the

21  Court of Appeals remand of Mr. Martinez's original sentence.

22  After two trials Mr. Martinez was convicted of 12 counts of a

23  20 count indictment charging him with deprivation of civil

24  rights, aggravated sexual abuse, sexual abuse, and sexual

25  abuse of a ward.

1          On April 13, 2022, Mr. Martinez was sentenced to an

2   aggregate term of ten years in prison, five years of

3   supervised release, and $1,200 in special assessments.  On

4   July 30, 2024, the Court of Appeals remanded the matter for

5   resentencing finding that the original ten year sentence was

6   procedurally and substantively unreasonable.

7          To quote the Circuit, "The district court erred by

8   not appreciating the true nature of the offense of conviction.

9   That error resulted in a sentence that was too low to

10  adequately reflect the seriousness of the crimes for which Mr.

11  Martinez was actually convicted by the jury."

12         This case was reassigned to me following the remand.

13  Over the past month I have familiarized myself with the case

14  spending several days carefully reading the record.  Among

15  other things, I reviewed the entire docket sheet and read many

16  of the documents on it.  I've read the indictment, the March

17  18, 2020 presentence report, the April 22, 2022 revised

18  presentence report, and the three addenda to the presentence

19  reports, the parties' objections to the PSR and the original

20  sentencing submissions, and the parties' recent submissions on

21  resentencing, one of which I think was filed last night.

22         The various victim impact statements and statements

23  in support of Mr. Martinez and the full transcripts from both

24  trials and the original sentencing.  Of course I read the

25  Second Circuit's remand order indeed several times.

*Proceedings*                                                      4

1   Therefore, for the record, I've read documents 1, 10, 21, 61

2   to 68, 106, 109, 111 through 117, 120, 121, 124, 125, 128

3   through 137, 140 through 143, 145, 148, 157, and 161 to 165.

4            Have I overlooked any submissions or anything else

5   relevant to resentencing?

6            MS. BENNEK:  I don't believe so.  Thank you, Your

7   Honor.

8            MR. RICCO:  No, Your Honor.

9            THE COURT:  Under federal sentencing law I must

10  first consider the sentencing guideline range under the

11  advisory sentencing guidelines.  In that regard I have

12  reviewed the PSR and the revised PSR both for substance and

13  their guideline calculation.

14           I also separately calculated the guidelines and find

15  that the guideline calculation in the April 22, 2022 revised

16  PSR to be correct.  I am inclined to adopt the revised PSR

17  with the exception of paragraph 22, which has been stricken.

18  Mr. Ricco, have you and Mr. Martinez read and discussed the

19  PSRs and addenda?

20           MR. RICCO:  Yes, Your Honor.

21           THE COURT:  Have you had sufficient opportunity to

22  discuss any potential issues with Mr. Martinez?

23           MR. RICCO:  I have, which was the reason for the

24  late filing yesterday, Judge.

25           THE COURT:  Do you have any remaining objections to

1    the revised PSR, including the guideline calculations?

2                MR. RICCO:  No, sir.

3                THE COURT:  Ms. Bennek?

4                MS. BENNEK:  Your Honor, I wanted to make one note.

5    There was a change to the sentencing guidelines 1B1.3(c),

6    which is related to what constitutes relevant conduct, which

7    no longer allows us, in my understanding, to use acquitted

8    conduct in the guidelines.  It does not change the sentencing

9    calculations, but I do believe that paragraph 30 and 62, which

10   provide enhancements for aggravated sexual abuse for the

11   sexual abuse charges should be removed.  I apologize for not

12   flagging it in advance.

13               MR. RICCO:  We agree with that, Your Honor.

14               MS. BENNEK:  I note it does not affect the ultimate

15   calculations.  It just would affect how the PSR is adopted.

16               THE COURT:  You said 30 and 32?

17               MS. BENNEK:  30 and 62.

18               THE COURT:  30 and 62.  And this is in the revised

19   PSR?

20               MS. BENNEK:  Yes.  This is in the April 22, 2022

21   post sentencing revised PSR.

22               THE COURT:  So that paragraph 30 relates to --

23               MS. BENNEK:  It relates to --

24               THE COURT:  The first sexual abuse, correct?

25               MS. BENNEK:  Yes.

*Proceedings*                                                    6

1     THE COURT:  Count one, two, three, and four.

2     MS. BENNEK:  Yes, relates to the oral rape on the

3     first incident where the defendant was acquitted of the

4     aggravated sexual abuse.  And so because that enhancement

5     contemplates aggravated sexual abuse having taken place and

6     because he was acquitted of that conduct, I think that should

7     be removed.

8     THE COURT:  And 62 relates to count nine, which is?

9     MS. BENNEK:  The 9R is originally 11 in the original

10    indictment, and that is the vaginal rape between December 2015

11    and February 2016, which is the same circumstance he was

12    convicted of the sexual abuse but acquitted of the aggravated

13    sexual abuse with that instance.

14    THE COURT:  I will strike those paragraphs 30 and 62

15    from the revised PSR and adopt it.  Is it correct, Ms. Bennek,

16    that it does not affect the guideline, overall guideline

17    calculation, because it's been pointed out the guideline

18    calculation is driven by the civil rights charge?

19    MS. BENNEK:  Yes.

20    THE COURT:  So it does not affect the overall

21    guideline calculations.  Thank you.

22    MS. BENNEK:  Thank you, Your Honor.  Again, my

23    apologies for not raising it before sentencing.

24    THE COURT:  After considering the PSRs and the

25    parties' objections previously made, I adopt the revised PSR

1   as modified by the colloquy that we just had, including the

2   guideline calculation.  Ordinarily I would walk the parties

3   through my guideline calculation with citations to the

4   relevant guidelines and statutes.  However, as I have adopted

5   the guideline calculation in the revised PSR I'll forego doing

6   so.

7          Suffice it to say that Mr. Martinez's total offense

8   level is 44, his Criminal History Category is I and,

9   therefore, his advisory guideline range is life.  Under the

10  guidelines, all but one count requires a supervised release

11  term of five years.  The other count is two to five years.

12  All supervised release terms to run concurrently.  The

13  guideline range for a fine is from 50,000 to 250,000, and

14  restitution is mandatory.

15         Do any disputes remain with respect to this

16  guideline calculation?

17         MS. BENNEK:  Not from the government.

18         MR. RICCO:  No, Your Honor.

19         THE COURT:  Speaking of restitution, Ms. Bennek, has

20  the victim been informed of this proceeding?

21         MS. BENNEK:  Yes, Your Honor.

22         THE COURT:  Is she going to be submitting an

23  application for restitution?

24         MS. BENNEK:  My understanding is that she is not.

25  She submitted the two impact statements, which were previously

1    provided to the Court.  Her counsel reached out to confirm

2    that those were, in fact, provided to the Court and that was

3    the extent of what they asked us to present.

4              THE COURT:  At the end of this do I need to leave it

5    open for the 90 days to see if she does submit something?

6              MS. BENNEK:  No, I don't believe so, Your Honor.

7              THE COURT:  Thank you.  18 U.S.C. 3553(a) requires

8    the Court to impose a sentence that is sufficient but not

9    greater than necessary to comply with the purposes of

10   sentencing, which include the need for the sentence to reflect

11   the seriousness of the crimes, to promote respect for the law,

12   to provide just punishment for the offense, to afford adequate

13   deterrence to criminal conduct, to protect the public from

14   further crimes of the defendant, and to provide the defendant

15   with needed educational or vocational training, medical care,

16   or other correctional treatment in the most effective manner.

17             In determining the appropriate sentence, the Court

18   must also consider the nature and circumstances of the

19   offense, the history and characteristics of the defendant, the

20   kinds of sentences available, the need to avoid unwarranted

21   sentencing disparities among defendants with similar records

22   who have been found guilty of similar conduct, and the need to

23   provide restitution to any victims of the offense.

24             I'd like to offer the parties a few preliminary

25   thoughts on how I see these factors playing out, beginning

*Proceedings* 9

1    with the nature and circumstances of the offense and the

2    history and characteristics of Mr. Martinez.  This is an

3    extremely serious case.  Indeed, one judge previously

4    described during the appeal of the denial of bail it is a

5    heinous case.

6         While a high ranking law enforcement officer

7    responsible for the safety and security of inmates at the

8    Metropolitan Detention Center, Mr. Martinez forcibly raped an

9    inmate once and used threats and fear to rape her four other

10   times.

11        He was involved in educating the MDC staff regarding

12   the Prison Rape Elimination Act.  He was an instructor who

13   advised officers and staff that there were prohibitions

14   against this kind of conduct, and that there were remedies for

15   this kind of conduct.  He knew his conduct was unlawful.

16        Yet he abused his power and authority to commit

17   repeated sexual assaults over a period of months.  Simply put,

18   he knew better.  It's important to know that through its

19   guilty verdicts, the jury rejected Mr. Martinez's testimony

20   that his actions were just part of a relationship he had with

21   Maria, a contention he continues to make to this day.  I will

22   not belabor the point, but the impact of Mr. Martinez's crimes

23   of Maria was severe, as she testified to at both trials.

24        The sentence imposed must provide for just

25   punishment for the serious offenses Mr. Martinez committed and

*Proceedings*                                                    10

1    the harm he has done to Maria.  As the Second Circuit

2    implicitly found, a ten year sentence does not provide

3    sufficient punishment.

4          The sentence must also provide for deterrence, both

5    specifically to Mr. Martinez and generally to federal

6    correction officers.  Although the need for specific

7    deterrence is somewhat minimized by the loss of Mr. Martinez's

8    position as a law enforcement officer and that he will likely

9    never hold such a position again, it remains as Mr. Martinez

10   persists in his belief that this was nothing more than a

11   consensual relationship that he mistakenly entered.

12         General deterrence is also warranted.  I

13   particularly credit the need for general deterrence is high in

14   a case like this.  Law enforcement is able to operate in large

15   part because of the public's trust.  When law enforcement

16   officers abuse the trust for personal gratification, like Mr.

17   Martinez did here, there are consequences for the legitimacy

18   of the rule of law and public safety.  Federal correction

19   officers need to know that significant prison sentences will

20   be imposed should they choose to sexually victimize inmates in

21   their custody.

22         In determining an appropriate sentence, the Court

23   must also avoid unwarranted sentencing disparities among

24   defendants with similar records who have been found guilty of

25   similar conduct.  I note that in a recent case Judge Matsomoto

1    sentenced a former MDC lieutenant, Eugenio Perez, to 25 years

2    for the forcible sexual abuse and attempted sexual abuse of

3    five women at MDC.  In that case the sentencing guideline

4    range was also life.

5           While there were more victims and more charges, and

6    Mr. Perez might not have the same background as Mr. Martinez,

7    the cases are similar enough that the Court should be careful

8    to avoid any unwarranted sentencing disparities between the

9    two.

10          Of course, Mr. Martinez's history and

11   characteristics present many mitigating factors that warrant a

12   variance far below the sentencing guideline range of life.

13   For all the reasons the Court previously cited during the

14   sentencing hearing and in its statement of reasons, and for

15   the reasons Mr. Martinez cited in his various sentencing

16   submissions, a variance is warranted, including Mr. Martinez's

17   challenging upbringing in Red Hook, Brooklyn from which he

18   successfully extricated himself.

19          I credit the fact that until he engaged in this

20   conduct he was a productive and, apparently, law abiding

21   member of society.  Mr. Martinez's service in the United

22   States Marine Corps and his honorable discharge, his combat

23   service in Operation Desert Storm, the evacuation of refugees

24   from the American Embassy in Liberia, and assistance in the

25   effort to rescue and recover victims of a deadly mudslide in

*Proceedings*                                                    12

1   the Philippines, his diagnosis of post-traumatic stress

2   disorder following his military service, his service to the

3   city and to the country in the days and months after the 9-11

4   terrorist attack on the World Trade Center, and his colon

5   cancer diagnosis, which is possibly associated to his exposure

6   to the debris at the World Trade Center.

7           Mr. Martinez's previously unblemished long career

8   with the Bureau of Prisons during which he was recognized for

9   exceptional valor in assisting police officers in extricating

10  a man from a tractor trailer that had flipped and was on fire.

11          The fact that Mr. Martinez endured two trials in

12  part because the government failed to provide all of the Brady

13  material for the first trial, the loss of his job, his pension

14  and the lack of future job prospects.  Based on his

15  conviction, he has lost his livelihood, his pension, and his

16  prospect for employment in the field of law enforcement will

17  almost assuredly be foreclosed.

18          As noted on the record by the district court

19  previously, Mr. Martinez's history and characteristics and the

20  circumstances under which the offense was committed suggests

21  that he would not commit a similar aggravated sexual offense

22  after release from incarceration.

23          Mr. Martinez's post sentencing conduct while

24  incarcerated, as exhibited in his recent sentencing

25  submissions, is another mitigating factor.  I do, however,

*Proceedings*                                                    13

1   reject Mr. Martinez's argument that because the jury acquitted

2   him of three forcible rapes that that should somehow mitigate

3   the sentence on the crimes Mr. Martinez did commit.  This

4   argument is contrary to my understanding of the law and

5   acquitted conduct.  In any event, the argument is illogical.

6   Just because Mr. Martinez may not have committed one or three

7   forcible rapes does not lesson the severity of the forcible

8   rape he did commit.  Those are my initial thoughts and I will

9   now hear from the parties.  Mr. Ricco.

10          MR. RICCO:  Yes, Your Honor.  I've been involved

11   with this case for several years now.  I think I was here from

12   the beginning through both trials, through the hearings.  Over

13   the time period I've gotten to spend a lot of time with Mr.

14   Martinez.

15          As Your Honor -- as I can tell, Your Honor has

16   familiarized himself with the submissions that we filed.  It

17   was very important to me and to Mr. Martinez that he does

18   express genuine remorse over his conduct.  He has a different

19   perspective of what he thinks he did, but he accepts the

20   jury's verdict and has said so and has done so.  But it was

21   very important, and Your Honor has familiarized itself, with

22   his extraordinary life.

23          One week after his 18th birthday he signed up for

24   the Marine Corp, and I don't want to belabor the record with

25   it because Your Honor knows it.  He joined the Marine Corp and

*Proceedings*                                                      14

1    he served with distinction instinct and valor and three combat

2    operations leaving him with PTSD as a very young man.

3             I think he was employed by the Bureau of Prisons

4    within months of his discharge from the military, and before

5    this incident his employment with the Bureau of Prisons, as we

6    point out in our submission, he's decorated 40 some odd times

7    for all types of acts and conduct of heroism, of exemplary

8    service.  As pointed out on submission, he was a

9    well-respected individual for his accomplishments in life.

10            He chose to testify.  He wanted to testify.  He did

11   not testify in the first trial.  He was convicted and he

12   accepted the jury's verdict, and he recognizes duty and

13   service.  He recognizes that.  He violated the public's trust,

14   the trust and the honor he has for himself in engaging in

15   conduct with the victim here.  He recognizes and knows there

16   is no good explanation for that.  It's illegal and should not

17   happen under any circumstances.

18            And so he was sentenced, in my opinion, to a

19   substantial sentence.  Now my opinion is just that.  It's just

20   my view of punishment, and ten years in prison is a long time.

21   And the ten years in prison for this particular individual is

22   even more difficult, as anticipated by Judge Korman because of

23   his health condition.  In fact, we point out in our submission

24   that because of the lack of care, we actually had to get in

25   touch with the Court and the government so that he could get

*Proceedings*                                                    15

1  proper health care when he was incarcerated in Colorado.  He

2  did, as a result of that intervention.

3          He's doing better now, but I believe his episodes

4  are subject to remission and reoccurrence, stress, diet, and

5  all of those factors come in to play, in addition to age.

6          So after his sentence Mr. Martinez did what I think

7  anybody who has ever spent five minutes with him would

8  recognize.  He has had an exemplary record since his sentence.

9  As a lawyer, I just -- after defendants are sentenced we just

10 rely upon the data that's provided by the Bureau of Prisons.

11 But every once in a while an inmate or staff will write to the

12 Court.  And in this case Mr. Charles Head wrote to the Court

13 describing the man that he met in prison.

14         He talked about how Mr. Martinez helped him as a

15 veteran while doing time, that Mr. Martinez was involved in

16 activity to help terminally ill veterans in the greenhouse

17 program.  Mr. Martinez is also involved in the greenhouse

18 program that provided to the homeless people of Colorado.  And

19 in addition to that, because of his status in the military,

20 the PTSD, he participated in a host of courses to give him

21 therapeutic help.

22         And then in addition to that, Your Honor, he

23 participated in paralegal courses, training and education, to

24 prepare himself.  As Mr. Head pointed out, he also became sort

25 of like a role model to young inmates that came into the

*Proceedings*                                                      16

1    Bureau of Prisons.

2              And so, after sentencing Mr. Martinez continued on a

3    path that he started when he was 18 years old coming out of

4    Red Hook.  He wanted to make a difference where he was, and he

5    wanted to turn adversity into aspiration and he's done it.

6    Mr. Martinez says the most important thing that's happened to

7    him since he's been incarcerated has been his faith in God and

8    just hope for redemption for himself.

9              Judge, other than this incident, which is a horrible

10   incident, I'll say it a thousand times, unjustified,

11   unwarranted, illegal, horrible, forcible rape is what Judge

12   Korman said and Your Honor has said, of a person who he was

13   there to protect and he was in a supervisory position.  Other

14   than that time period, Carlos Martinez has lived an incredible

15   life of honor and service and good conduct and giving to

16   others.

17             He was a soldier who would never leave someone on

18   the battlefield, and as an inmate he conducted himself with

19   honor and dignity to try to help himself and others around him

20   and someone has written to the Court and said that was my

21   experience with him.

22             But Your Honor has it.  I'm confident of that.  So

23   where does the balance lie?  My view, Judge, was expressed in

24   my papers because I look at the factors also.  And I think all

25   of the factors that Congress talks about in 3553(a), promoting

*Proceedings*                                                        17

1   respect for the law, he's done that since.  Need for

2   vocational training, he's done that.  Needed medical

3   assistance, he's done that, both his physical ailments and his

4   psychological wellbeing.

5           The general deterrence, Judge, during the trial

6   there used to be -- this courtroom was filled with members of

7   the Department of Bureau of Prisons, officers.  Not a person

8   here today from the Bureau of Prisons, other than Mr.

9   Martinez's aunt, nephew, interns sitting in the back.  He's

10  here now for resentencing.  He's a very thoughtful man.  He

11  wants a life.  As a result of the case he was divorced.  His

12  daughter is now in college.  When he started she was a

13  young -- I don't even think she was in junior high school, and

14  I know that they have a relationship with one another.

15          When he walks away from the Bureau of Prisons, and I

16  hope that he does walk away from the Bureau of Prisons, that

17  his physical problems don't overtake him, he's got a very tall

18  and long road ahead of him.  My sense, Judge, is that when

19  that day comes, Mr. Martinez is going to confront it and

20  handle it with all of the honor and dignity that he's lived

21  his life but for this.  Why Mr. Martinez got involved in this,

22  is a question that has escaped me.

23          He had a good life, Judge, good relations with

24  people, people respected him, honored him, and he's lost a

25  lot, Judge, since he's been in prison.  His mother passed

*Proceedings*                                    18

1   away.  We tried to get him to the funeral.  It just couldn't

2   work.  And, of course, his marriage is long gone; pension,

3   long gone.  His aunt is still here, still interested in her

4   sister's son, still trying to contribute to him.

5          We punish people in our society every day.  For four

6   decades I've come into courts here, state courts, everywhere,

7   capital cases, you name it, and people get punished for the

8   things that they do and the harm they cause other people.

9          Mr. Martinez is really just asking that that be

10  balanced against him as an individual.  He doesn't take

11  lightly, Judge, at all what has happened here.  I would take

12  exception that it was just something.  He recognizes that he

13  was not allowed to do this, and so he's here for sentencing.

14         Judge, I don't want to rehash dozens of pages about

15  Mr. Martinez's life, but I've been very clear about what I

16  believe are the mitigating factors and Your Honor has

17  identified those factors.  I'm not asking the Court to rely on

18  any other factor, other than those we presented.

19         And our hope is that Your Honor will find a sentence

20  here that's sufficient but not greater than necessary to

21  punish a very distinguished man who made a horrible, horrible

22  poor choice in judgment.  He hurt another human being.  We sat

23  through two trials of it.  He destroyed all the great efforts

24  that he had in his life, and he has a tall order in front of

25  him and I'm happy to see that he's got his faith in God

*Proceedings*                                                          19

1    because that's going to get him through this all.  Thank you,

2    Your Honor.

3              THE COURT:  Thank you, Mr. Ricco.  Ms. Bennek.

4              MS. BENNEK:  Thank you, Your Honor.  As defense

5    counsel noted, you're very familiar with the record.  I just

6    want to highlight a couple of points.

7              The first is, the seriousness of this defendant's

8    conduct and the harm that he caused cannot be overstated.  It

9    is simply horrific.  He is a serial rapist who abused his

10   power to rape a woman who was helpless in his care.  That is a

11   hard position to imagine being in, what that young woman was

12   going through for those months that she was experiencing this

13   crime.  She was in custody, she did not speak much English,

14   she was young, she had no way to leave, no way to get away

15   from him, and who was she supposed to tell.  He was the boss.

16   So she was completely trapped.

17             I think the Second Circuit articulated well the

18   horrific nature of the defendant's conduct stating, and this

19   is a quote from their opinion, "That he abused his position of

20   authority over an inmate in his charge to place her into a

21   setting where he could violently and serially overbear her

22   will and rape her without fear of detection."

23             His decision to do this was calculated and

24   premeditated.  He called her to the lieutenant's office during

25   times that he knew there wouldn't be other people around, and

*Proceedings*                                                            20

1  he used the computer system to monitor to ensure that nobody

2  caught him while he was raping and abusing this woman.

3         The first time that he raped her, he raped her with

4  such force that she bled long after the assault and she needed

5  a sanitary pad to manage the blood that he caused.  The impact

6  of his crimes, I think, are clear from both the trial

7  testimony and the statements that the victim submitted to the

8  Court for sentencing.  Maria wrote in one of her impact

9  statements, "Although I realize that I am not only a victim,

10  that it's just one page in the book of my life, it's a page I

11  would like to rip from my soul."  It's a pretty powerful

12  statement and I think it's a statement that shows just how

13  deeply this defendant's conduct affected this young woman and

14  how it will affect her for the remainder of her life.

15         I think it's clear that the conduct warrants a

16  significant sentence.  In addition to that, as Your Honor

17  noted, there is a serious need for both general deterrence

18  here, and I also think specific deterrence.  As a general

19  matter, officers who are working with inmates need to know

20  that they are not above the law and they need to know that if

21  they violate inmates in their care there will be very serious

22  consequences.  More specific to this defendant, I strongly

23  disagree with the statement that he has shown genuine remorse.

24         He has, in fact, throughout the proceedings shown a

25  complete inability to grasp the seriousness of the crime he

*Proceedings*                                                          21

1   committed and the harm he caused.

2          It's been more than seven years since the defendant

3   was indicted and arrested.  Two juries have convicted him of

4   raping Maria, and yet he still refuses to accept

5   responsibility for the actions that he took, for the crimes he

6   committed, and the harm he caused.  He has made statement

7   after statement through all of the proceedings, both through

8   his lawyers and directly in his own letter to the Court,

9   minimizing or outright lying about what his crimes were.

10         Today defense counsel indicated he shows genuine

11  remorse but has a different perspective.  There is simply not

12  a different perspective to rape.  In the defendant's most

13  recent letter to the Court he described his conduct, as Your

14  Honor noted, as having a sexual relationship with a prisoner.

15  As we state in our written submission, that is a gross

16  misrepresentation of what happened.

17         Raping a woman is not having a sexual relationship

18  with a woman, and there could be no mistake that both juries

19  found that the defendant raped Maria.

20         I do want to touch on the defendant's comments about

21  his exemplary history and record.  I agree that there are

22  mitigating circumstances here and that the defendant has an

23  exceptional history in many ways, and has conducted himself in

24  a way that is commendable post sentencing.  But I do think it

25  is really important that we are able to hold in our minds the

*Proceedings*                                                    22

1  fact that while the defendant was raping Maria he also had an

2  exemplary record to the public.  He's capable of both things.

3  That is just the reality.  He is capable of doing good in the

4  world and is capable of extreme violence and degrading and

5  harming another human being at the same time.

6              The defense here argues for the Court to reimpose

7  the overturned sentence of ten years.  And this, I think, as

8  Your Honor noted, you've read the Circuit opinion multiple

9  times, the Circuit chose to reach the issue of substantive

10 unreasonableness of the sentence.  They discussed it at oral

11 argument, the fact that they could just decide this case on

12 procedural unreasonableness and just not reach the issue of

13 substantive unreasonableness.  They acknowledge it in their

14 written decision where they recognize that it's within their

15 discretion to reach the issue of substantive unreasonableness.

16             The fact that they chose to reach that portion of

17 the appeal and to come back and say not only was this

18 procedurally unreasonable, but it was also substantively

19 unreasonable is sending a very clear message that ten years is

20 simply not sufficient for the crimes the defendant committed.

21             So for those reasons, based on the severity of the

22 conduct, the harm the defendant has caused, his inability to

23 truly appreciate the severity of his crime, and also because

24 of the need for both general and specific deterrence, we'd ask

25 the Court to impose a significant sentence above 20 years in

*Proceedings*                                              23

1    this case.

2            THE COURT:  Does probation want to be heard?

3            THE PROBATION OFFICER:  Not unless you have any

4    questions, Your Honor.

5            MR. RICCO:  Judge, may I just point out that at the

6    original sentencing the government requested a sentence of 20

7    years.

8            THE COURT:  I think the government -- my

9    recollection of the papers is that the government recommended,

10   requested, I guess, a significant sentence.  I don't know if

11   they used the word in excess, or something to that effect, of

12   20 years.  So they've always been over 20 years.  Thank you,

13   Ms. Bennek.

14           Mr. Martinez, you do not have to make a statement

15   but you can make a statement, if you want.  I believe in the

16   not last night's but the submission prior to that, Mr. Ricco

17   indicated that you do want to make a statement.  The floor is

18   yours.

19           THE DEFENDANT:  Honorable, Judge Reyes.  Thank you

20   for allowing me the opportunity to address the Court

21   respectfully.  Your Honor, you don't know how hard it is for

22   me to be here once again, but here I am at your mercy.  I've

23   always taken full responsibility in making good and not so

24   good decisions.  I'm not perfect, but it's also important that

25   I make clear that I never forced or threatened my accuser.

*Proceedings*                                                                24

1          It's not who I am.  It's a line I would never cross.

2    I have always said that I would voluntarily submit to a

3    polygraph examination, and although it may be inadmissible in

4    court, at least it would show that I was truthful.  As

5    difficult as it may be for me to accept, I have to respect the

6    jury's verdict.  Your Honor, I'm not a violent person.  I'm in

7    a low security facility.  My recidivism is low.  I have low

8    security points.  Most importantly, I'm not a threat to the

9    community, only a positive member, and my record speaks for

10   it.

11         Moving towards repentance, redemption, and to

12   remorsefully right wrongs, I have taken steps to improve my

13   character during my time incarcerated.  I have taken several

14   educational, psychological programs, as I described in my

15   previous letter to you.  My work assignments are very good.  I

16   have no incident reports or disciplinary record.  I arrived at

17   FCI Englewood in Colorado in August of 2022.  I was placed in

18   an 18 month veterans residential program, in which I

19   successfully completed.  I also completed other programs, such

20   as Resolve program, traumatic brain injury, Disability

21   Education program, cognitive processing therapy, dialectic

22   processing therapy, and several others to mitigate the PTSD I

23   suffered from military operations.

24         My rehabilitation also included a spiritual element.

25   I am a practicing Christian, a man of great faith, and a

1   member of the prison ministry.  In my spare time I also study

2   legal material in the law library, and successfully completed

3   a two-year paralegal certification program from an accredited

4   school.

5          But my proudest achievement was volunteering with

6   other veterans and prison staff working in the greenhouse,

7   gardening and planting.  We grow flowers and vegetables.  The

8   flowers were sent to the nearest veterans hospital for

9   terminally ill veterans.  The vegetables will go to a local

10  soup kitchen to feed the homeless that serve in the community

11  of Littleton, Colorado.

12         Your Honor, prior to arriving at FCI Englewood, I

13  would like for you to take into consideration the time I spent

14  at Essex County jail in New Jersey.  I arrived there in May

15  2017 and was involuntarily placed in solitary confinement.

16  That was the worst period of my life, even more traumatic than

17  my military operations because of the length of time, 22 hours

18  a day I had spent in a cell.

19         My PTSD started getting worse.  My mental and

20  cognitive state started to decline.  I was prescribed psych

21  medications to help me cope through the days as time went on.

22  I was notified that my mother passed away.  I sat in a cell

23  with no support, and it was a hard time in my life.  A year

24  later I began having excruciating gastrointestinal pains.  I

25  was always vomiting.  That started to play devil's advocate in

*Proceedings*                                                                 26

1   my mind.

2         Psychologically I started believing that because of

3   the pain, the cancer that I had in remission came back.  Essex

4   County jail would not diagnose or treat the source of my pain,

5   only telling me they had to wait for federal authorization to

6   send me out to see a specialist.  They would give me

7   medications to see what worked.  Nothing worked.  It was only

8   making matters worse.  Only after I been in Colorado for a

9   year was I finally diagnosed and treated for ulcers,

10  diverticulosis, and gastrointestinal reflux.

11        It took five years before I got treated.  But still

12  in solitary confinement and at the jail, my mental and

13  physical health was declining.  I was hallucinating and having

14  nightmares.  I couldn't distinguish the time of day it was.  I

15  couldn't do anything or go anywhere.  Summers in that cell

16  felt like the sun.  In the winter, I endured frigid

17  temperatures.

18        When things couldn't get any worse, the Covid

19  pandemic struck.  I went from coming out of my cell one to two

20  hours a day, to not coming out every four or five days for a

21  15 minute shower.  I was in complete isolation, lockdown,

22  quarantine.  This lasted for over a year until they slowly

23  started lifting the restrictions.

24        This time I had been fearful of contracting Covid

25  because I had been sick.  My mental and physical health

*Proceedings*                                                                27

1    worsened.  My anxiety consumed me.  I had been in solitary

2    confinement for a total of five years and two months, not

3    including the three months that I have been here waiting for

4    resentence.

5           Your Honor, I currently struggle with PTSD, memory

6    and concentration.  This is why I'm writing these notes so

7    that I don't forget anything.  Before coming back to New York,

8    I had a scheduled visit in Colorado to meet with a

9    psychologist from the Department of Veteran Affairs, so when I

10   go to the halfway house this year I could check into a

11   residential treatment center at the VA hospital.  Now I don't

12   know what's going to happen.

13          Your Honor, I've done my time, hard time.  I've been

14   kept away from my family long enough.  I've done everything

15   that would require humility and redemption.  I apologize to

16   all that this has affected, and humbly asking to let me finish

17   this sentence with no additional time.  I believe everyone

18   deserves a second chance, especially those who have bettered

19   themselves.  Thank you, Your Honor.  I'm at your mercy.

20          THE COURT:  I've been a judge for almost 20 years, a

21   district judge for just over one year.  This is by far the

22   most difficult thing I've had to do.  I think every judge will

23   tell you that sentencing is second to none on the difficulty

24   scale.

25          In this case in particular, given Mr. Martinez's

*Proceedings*                                                        28

1    history and characteristics, it's even more difficult.  That

2    said, I can't overlook the severity of this crime, these

3    crimes, excuse me, and the impact it's had on the victim, and

4    the Second Circuit's admonition that ten years is not enough.

5    Who is to say what's enough?  But decide, I must.

6            After assessing the particular facts of this case

7    and considering the sentencing guidelines, the parties'

8    arguments, and given the relevant 3553(a) factors, I sentence

9    Mr. Martinez as follows.  I'm going to use the counts from the

10   original complaint.

11           On Counts 4, 8, 12, 16, and 20, I sentence Mr.

12   Martinez to 15 years custody, which is the statutory maximum

13   sentence on those counts.  On counts 3, 5, 6, 7, 11, 15, and

14   19, I sentence Mr. Martinez to 20 years custody.  The

15   sentences on all counts will be run concurrently.

16           Mr. Martinez will serve five years of supervised

17   release on each count to run concurrently with mandatory and

18   standard conditions, and the following special conditions.

19   The defendant shall refrain from contacting the victim of the

20   offense, unless specific permission is granted by the

21   probation department.  This means that he shall not attempt to

22   meet in person, communicate by letter, telephone, email, the

23   internet, or through a third party without the knowledge and

24   permission of the probation department.

25           The defendant obtains employment, which allows him

*Proceedings*                                                      29

1   to have custody, care, or control of any minors or adults.  He

2   must inform his future employer of his prior sex offense and

3   allow the probation department to verify the employer is

4   aware.

5            The defendant shall participate in a mental health

6   treatment program, which may include participation in a

7   treatment program for sexual disorders as approved by the U.S.

8   Probation Department.  The defendant shall contribute to the

9   cost of such services rendered and/or any psychotropic

10  medications prescribed, to the degree he is reasonably able

11  financially and shall cooperate in securing any applicable

12  third-party payment.

13           The defendant shall disclose all financial

14  information and documents to the probation department to

15  assess his ability to pay.  These special conditions are

16  appropriate given the nature of the charges, and I really

17  don't think I have to go beyond that.

18           THE PROBATION OFFICER:  Your Honor, we also had

19  requested that he comply with any sex offender registration.

20           THE COURT:  That's one of the mandatory conditions,

21  I believe, at least it was in the Court's prior judgment.  It

22  appeared under the mandatory conditions.  Isn't it required by

23  the Court -- it appears under mandatory conditions in the

24  prior judgment.

25           You must comply with the requirements of the Sex

*Proceedings*                                                    30

1   Offender Registration Notification Act, 34 U.S.C. 2901, as

2   directed by the probation officer, the Bureau of Prisons, or

3   any state sex offender registration agency in the location

4   where you reside, work, are a student, or were convicted of a

5   qualifying offense.

6          That was the only reason why I didn't put it in the

7   special conditions, because it was my understanding that

8   that's part of the mandatory conditions of this offense.

9          MS. BENNEK:  Your Honor, I'm looking at the standard

10  conditions of supervision.  I'm doing it quickly, docket 142.

11         THE COURT:  Look to your left.  Mandatory

12  conditions, bottom of the page.

13         MS. BENNEK:  Okay, yes.

14         THE PROBATION OFFICER:  My apologies, Your Honor.

15         MS. BENNEK:  Thank you, Your Honor.

16         THE COURT:  Again, with these special conditions I

17  don't believe I need to go beyond the crimes of conviction and

18  show a specific need for these conditions.

19         Does Mr. Martinez object to any of the special

20  conditions, Mr. Ricco?

21         MR. RICCO:  No, Your Honor.

22         THE COURT:  There is also $100 special assessment

23  for each count of conviction.  There are 12 counts.  So that's

24  $1,200.  I believe Mr. Martinez has already paid the special

25  assessment.  And I'm not imposing a fine, although I don't

1   believe we have financial disclosures from Mr. Martinez.

2          I don't believe, given his loss of job, loss of

3   pension, the fact that he's been incarcerated for seven years,

4   he was granted IFP status for his appeal, I don't believe

5   there's any question that he has no ability to pay a fine.

6          THE PROBATION OFFICER:  There is none, Your Honor.

7          THE COURT:  Okay.  And restitution, although it's

8   mandatory under the law, given Ms. Bennek's statement that she

9   understands that Maria does not intend to submit an

10  application for restitution, I will not order it.

11         I find that this sentence is sufficient but not

12  greater than necessary to comply with the purposes of

13  sentencing set forth in 18 U.S.C. 3553(a)(2).

14         Mr. Martinez, if you choose to appeal the sentence,

15  any notice of appeal must be filed within 14 days of the entry

16  of judgment, or within 14 days of the filing of the notice of

17  appeal by the government.

18         If requested, the clerk of the court will prepare

19  and file a notice of appeal on your behalf.  If you cannot

20  afford to pay the cost of an appeal or for appellate counsel,

21  you have the right to apply for leave to appeal in forma

22  pauperis, which means you can apply to have the Court waive

23  the filing fee.

24         Do you understand that?

25         THE DEFENDANT:  Yes.

*Proceedings*                                                   32

1          THE COURT:  Are there any other matters?

2          MS. BENNEK:  Not from the government.  Thank you.

3          MR. RICCO:  No, sir.  Nothing.

4          THE COURT:  We're adjourned.

5                (Proceedings concluded.)

6          - - - - - - - - - - - - - - - -

7

8          I certify that the foregoing is a correct transcript

9   from the record of proceedings in the above-entitled matter.

10

11   */S/ Nicole Sesta, RMR, CRR*
     *Court Reporter/Transcriber*

12

13   *March 11, 2025*
          *Date*

14

15

16

17

18

19

20

21

22

23

24

25